**Ex parte Joe WILLIAMS.**

No. 68898.

Court of Criminal Appeals of Texas, En Banc.

July 21, 1982.

Rehearing Denied Sept. 15, 1982.

944

Robert E. DeLong, Jr., Huntsville, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

This is an application for habeas corpus which was submitted to this Court by the trial court pursuant to the provisions of Article 11.07, V.A.C.C.P.

On May 11, 1981, applicant was arraigned on a charge of theft over $10,000. The indictment alleged two prior felony convictions. Applicant pled guilty, pursuant to a plea bargain agreement whereby the enhancement paragraphs would be dismissed and the applicant would receive a ten-year sentence and a $5,000.00 fine. The plea bargain agreement contained a further provision to the effect that, if applicant paid the $5,000 fine and paid restitution of $5100.00 to the Lampassas Cattle Company by the time of sentencing, the State would recommend probation. The trial court, after carefully questioning and admonishing the applicant and hearing evidence, agreed to be bound by the plea bargain agreement. The trial court found the applicant guilty of theft of more than $10,000 and assessed punishment at confinement in the Texas

Department of Corrections for a term of ten years and a fine of $5,000.00.[1] Sentencing was set for June 11, 1981. By agreement, sentencing was moved to June 12, 1981. On June 12, 1981, the court called the case for sentencing. Applicant asked the court to delay sentencing for one week so that he could finalize arrangements for payment of the fine and restitution. The court continued sentencing until July 9, 1981, giving the applicant four additional weeks to pay the fine and restitution according to the plea bargain agreement. When the case was called on July 9, 1981, applicant's attorney admitted that applicant had not been able to raise $5,000.00 to pay the fine. Before sentencing applicant, the court asked him if he had anything to say in bar of imposition of sentence. Whereupon applicant asked to dismiss his attorney and withdraw his plea of guilty and plead not guilty. The court refused and then sentenced applicant to ten years' confinement in the Texas Department of Corrections.[2] The court refused to give applicant leave to appeal the case.

Applicant filed a motion for new trial, a motion to reform judgment, sentence, and for further relief, a motion for permission to file late notice of appeal for good cause shown, and a petition for writ of habeas corpus. In a hearing held on September 10, 1981, the trial court denied each of the motions and made the following findings of fact and conclusions of law:

"FINDINGS OF FACT

"1. Joe Williams is currently an inmate and in the custody of the Texas Department of Corrections at the Diagnostic Unit, Box 100, Huntsville, in the County of Walker, Texas.

"2. Joe Williams was arraigned by the Court upon his plea of guilty entered as a part of a Plea Bargain Agreement on May 11, 1981 in Cause No. 9443–B for the offense of Felony Theft.

"3. This Court, the State, and Defendant, Joe Williams, agreed to be bound by the Plea Bargain Agreement.

"4. The Plea Bargain Agreement included a provision that the prosecutor would waive the enhancement counts of the indictment and the Defendant would receive a ten year sentence and a fine of $5,000.00. Restitution in the approximate sum of $5,000.00 was also to be paid to Lampassas Cattle Company, the injured party, and sentencing was to be pronounced on June 12, 1981. If the fine and restitution to Lampassas Cattle Company were actually paid at the time the case was called for sentencing, the Defendant would receive probation as to the prison term and if not he would be sentenced to 10 years T.D.C. and a fine of $5,000.00.

"5. On May 11, 1981 the Court in accordance with the Plea Bargain Agreement assessed punishment at

---

1. The notation on the docket sheet for May 11, 1981, reads:

"Case called; State and Def. present w/counsel & ready; Def. duly arraigned and Plea 'Guilty'; range of punishment & admonitions given; Plea Bargain Agmt. recited to court; evidence heard court bound by Plea Bargain Agmt. Hold: Guilty of 2nd Degree Theft Punishment: $5,000.00 fine and 10 yrs. TDC. Sentencing set for 6–11–81 at 11 a.m., Def. released on bond as heretofore set."

The judgment omits any mention of the $5,000.00 fine and merely says that applicant:

"... be punished by confinement in the Texas Department of Corrections for a term of ten (10) years.

Neither docket sheet nor judgment make any mention of the possibility of probation.

2. The docket sheet reflects that applicant was sentenced to a term of not less than two nor more than ten years in Texas Department of Corrections and assessed a $5,000.00 fine. The sentence reflects that petitioner was ordered to serve a term of not less than two nor more than ten years. There is no mention of the fine. Below the notation regarding the sentence, the docket sheet reads:

"... the court after sentencing further declined to permit Def. to withdraw 'Guilty' plea to enter 'not guilty'."

10 years confinement in T.D.C. and a fine of $5,000.00. However, because of an oversight the Court failed to mention the $5,000.00 fine in the judgment.

"6. On July 9, 1981, when the case was called for sentencing, the Defendant had not and did not pay the fine. The case had been previously set for formal sentencing on June 12, 1981 but had been continued at the request of Defendant to give the Defendant a further opportunity to pay the fine and make restitution.

"7. The Defendant gave sworn testimony at the time of sentencing on July 9, 1981, that he was financially unable to pay the fine in cash and asked to withdraw his plea of guilty and enter a not guilty plea and to dismiss his attorney.

"8. The Defendant's request to withdraw his plea of guilty and to dismiss his counsel was denied.

"9. The Defendant did not produce the money required to be paid at sentencing so as to entitle him to probation. Accordingly, the Defendant was denied probation and formally sentenced to ten years in the Texas Department of Corrections and a fine of $5,000.00 on July 9, 1981.

"10. On July 9, 1981, the Defendant requested that he be allowed the right of appeal and to be released on appeal bond. Such requests were denied by the Court upon the basis that the Plea Bargain Agreement had been followed.

"11. The Defendant did not make reasonable efforts to obtain the money needed to pay the fine and restitution, between the time of his guilty plea and the time of sentencing.

"12. The Judgment sentenced Defendant to 10 years in the Texas Department of Corrections but no mention in the Judgment was made of the Plea Bargain terms, the fine or restitution to be made so as to entitle the Defendant to probation.

"13. The Defendant was transferred to the actual custody of the Texas Department of Corrections.

"CONCLUSIONS OF LAW

"Only the Texas Court of Criminal Appeals has jurisdiction to grant post conviction relief in a felony case, Article 11.07, Texas Court of Criminal Appeals (sic). This Court has jurisdiction only to enter Findings of Fact and Conclusions of Law and forward all of the records to the Court of Criminal Appeals for its decision. This Court does not have the authority to grant or deny relief.

"Defendant, Joe Williams, entered a plea of guilty on May 11, 1981 in Cause No. 9443–B, styled The State of Texas vs. Joe Williams in the 87th District Court of Freestone County, Texas. Said plea was the product of a Plea Bargain Agreement to which Defendant Williams agreed. The Court agreed to be bound by the Plea Bargain Agreement and on July 9, 1981, in accordance with the terms of said agreement sentenced Defendant to ten years confinement in the Texas Department of Corrections and a fine of $5,000.00. Defendant is legally confined in the Texas Department of Corrections."

Applicant first contends that the plea bargain and sentencing procedure in this case was illegal in that it violated the Equal Protection Clause of the United States Constitution. He bases his argument on *Barnett v. Hopper*, 548 F.2d 550 (5th Cir. 1977), vacated as moot, 439 U.S. 1041, 99 S.Ct. 714, 58 L.Ed.2d 701 (1978). Applicant contends that such a plea bargain created a disparity in sentence between an indigent and a person financially able to pay the fine and restitution.

We believe *Barnett* is not applicable in that it was vacated by the Supreme Court.[3]

---

3. Also, we are not bound to follow cases decided by the lower federal courts. *Flores v. State,* 487 S.W.2d 122 (Tex.Cr.App.1972).

In addition, *Barnett* is distinguishable from the case at bar in that Barnett's plea bargain agreement merely provided that the prosecutor would recommend that the court impose a ten-year probated sentence conditioned on the payment of a $2,000 fine and court costs. When Barnett could not pay the fine, he was sentenced to ten years' imprisonment. There was no provision for an alternate sentence should the fine and court costs not be paid. In the case at bar, the plea bargain called for the prosecutor to recommend ten years in TDC with the additional provision that if the fine and restitution were paid before sentencing, the prosecutor would recommend ten years' probation. The crux of the plea bargain was not probation, but a ten-year sentence in TDC. Anything on top of the ten-year prison term was icing on the top of the cake.

We feel the case turns on the plea bargain. The use of plea bargaining has become an important and integral part of our criminal justice system. *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

"For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages—the more promptly imposed punishment after an admission of guilty may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury." *Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970).

Essentially, plea bargaining consists of the prosecutor making concessions regarding specific punishment, lesser charges, or the reduction of counts which comprise the charging instrument in exchange for the defendant's concession as to his plea of guilty or plea of nolo contendere. The United States Supreme Court in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), has ratified the use of plea bargaining:

"Plea bargaining flows from the 'mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." 434 U.S. at 363, 98 S.Ct. at 668.

When a defendant agrees to the terms of a plea bargain agreement he is deemed to have entered into the agreement knowingly and voluntarily unless he shows otherwise. In effect, he becomes a party to a "contract". *Jones v. Estelle*, 584 F.2d 687 (5th Cir. 1978). The "contract" does not become operative until the court announces it will be bound by the plea bargain agreement. Once the court makes such an announcement, the State is bound to carry out its side of the bargain. Compare, *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *De Russe v. State*, 579 S.W.2d 224 (Tex.Cr.App.1979). Likewise, the defendant is bound to carry out his side of the bargain. This Court in *Joiner v. State*, 578 S.W.2d 739 (Tex.Cr.App.1979), speaking in contractual terms, said that when a plea bargain is not kept, the proper relief is either specific enforcement of the agreement or withdrawal of the plea, depending upon the requirements of the circumstances in each case. See also *Santobello v. New York*, supra. This applies to both the State and the defendant. The terms of the plea bargain are left to the parties.

In *Wyatt v. State*, 566 S.W.2d 597 (Tex.Cr.App.1978), this Court talked about Wyatt's plea bargain in contractual terms.

Wyatt had been serving a ten-year probated sentence when he was indicted for forgery and for aggravated robbery. The State and Wyatt entered into a plea bargain agreement whereby in exchange for Wyatt's plea of guilty to the forgery case and his plea of true to a revocation of the robbery probation, the State would recommend a ten-year sentence in each case and hold the aggravated robbery case in abeyance pending Wyatt's filing a frivolous appeal brief for the robbery and forgery cases. The State agreed to dismiss the aggravated robbery case after those appeals were affirmed. Thus, a condition precedent to any contractual duty of the State to dismiss the aggravated robbery case was the affirmance of the other two convictions. Although this Court questioned the terms of the plea bargain, the Court refused to rule that such terms made a void plea bargain agreement. This Court found that Wyatt had fulfilled his contractual obligations but since the robbery and forgery cases were not affirmed, the condition precedent to the State's contractual duty did not occur and thus the State did not have to dismiss the aggravated robbery case. Thus, the terms of a plea bargain agreement are to be left up to the parties who are dealing at arm's length. This Court will not interfere with those terms unless they appear to be manifestly unjust.

■ We refuse to hold that applicant was harmed by the terms of the plea bargain agreement. Applicant was dealing at arm's length with the State. He was fully cognizant of his own financial situation and capabilities. The plea bargain he agreed to was unique and tailored to his own individual needs. There was no violation of the equal protection clause.

"Equal protection does not free those who made a bad assessment of risks or a bad choice from the consequences of their decision." *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 493, 501, 58 L.Ed.2d 466 (1978).

Applicant knowingly and voluntarily entered into a "contractual" situation. Just as the State was bound to uphold its part of the plea bargain, so was the applicant bound to uphold his part of the agreement. We feel the applicant got what he bargained for.

This is not a case which falls under the guidelines expressed in *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *Morris v. Schoonfield*, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970); or *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). Those cases stand for the principle that the Constitution prohibits a State from imposing a fine as the sentence and then automatically converting it into a jail term because the defendant is indigent and cannot afford to pay the fine.

The case at bar is not one where the State unilaterally imposes a penalty upon a defendant. We are dealing with the give-and-take negotiation common in plea bargaining between the prosecution and the defense, which arguably possess relatively equal bargaining power. In the give-and-take of plea bargaining, the State cannot unilaterally impose an unconstitutional punishment so long as the accused is free to accept or reject the prosecution's offer.

Applicant's first contention is overruled.

■ Applicant next alleges that the judgment and sentence are void and thus his incarceration violates due process. He alleges the judgment should indicate the granting of probation. We disagree with this contention. Probation was never granted in this case. As noted earlier, the plea bargain agreement was that the prosecutor would recommend a $5,000 fine and ten years in TDC. However, if applicant paid the fine and restitution before sentencing, the State would further recommend the confinement be probated for ten years. The statement of facts indicates that, at the time of the plea, both applicant's attorney and the prosecutor agreed that this was a proper construction of the plea bargain agreement. The trial judge went on to say:

"THE COURT: Will the defendant please stand.

(Whereupon the defendant stood)

"THE COURT: Joe Ed Williams based upon the evidence heard and considered by the Court, the Court agrees to be bound by the plea bargain agreement. Now, at this time the Court finds you guilty of the felony offense of theft of more than $10,000.00 and assesses your punishment at confinement in the Texas Department of Corrections for a term of ten years and a fine of $5000.00."

The judge went on to set the sentencing date and there was no objection to the judgment by either applicant or his retained counsel.

We believe the judgment properly sets out the punishment announced in this case and recorded on the docket sheet. At the time the trial court accepted the plea of guilty, the punishment was confinement in TDC for ten years. Applicant's second contention is overruled.

■ Next, applicant argues that his "sentencing" was in fact the revocation of his probation without notice or a fair hearing, or in violation of his right to due process. Applicant argues that since he was released after his guilty plea was entered, in effect the formal imposition of punishment was suspended and he was granted probation, the sole condition of his continuing as a free person being that he pay his fine. This contention is totally without merit.

In the case at bar, there was no suspension of the imposition of punishment. The record shows that following the acceptance of applicant's guilty plea the trial court gave applicant almost sixty days to try and raise the money to pay the restitution and fine. The court's judgment had already announced punishment at ten years in TDC. Clearly the court had not placed applicant on probation.

Article 42.03, Section 1, V.A.C.C.P., in effect at the time of applicant's trial provides that "... sentence shall be pronounced in the presence of the defendant ... at any time after the expiration of the time allowed for making the motion for new trial or the motion in arrest of judgment." Article 40.05, V.A.C.C.P., in effect

at the time of applicant's trial, provides that the motion for new trial be filed within ten days after conviction. Article 41.02, V.A.C.C.P., in effect at the time of applicant's trial, provides that the motion in arrest of judgment must also be filed within ten days after conviction. Thus, the applicant in this case could have been sentenced anytime after May 11, 1981, and indeed he was sentenced on July 9, 1981. Applicant's third ground is overruled.

Applicant's fourth ground alleges that his sentence was illegally suspended in violation of Article 4, Section 11–A of the Texas Constitution and the due process clause of the Fourteenth Amendment. As we have stated above, applicant's punishment was not suspended. Any delay in sentencing that occurred after June 12, 1981, occurred specifically at the request of applicant. The trial judge had already named the punishment pursuant to the plea bargain agreed upon by applicant and the State. Applicant's fourth ground is overruled.

■ Applicant's fifth ground alleges that his guilty plea was involuntarily entered. He argues that he was not made aware that, if he could not come up with the money, he would be sent to prison. We find this contention totally without merit. The statement of facts from the hearing at which the guilty plea was taken shows that a lengthy discussion occurred between the prosecutor, judge and applicant's attorney as to the terms of the plea bargain agreement. The record reflects the applicant answered affirmatively when the trial judge asked him if he wanted the trial court to be bound by the plea bargaining agreement. In addition, the record reflected that at the time of trial, applicant was forty-five years old and had attended two and a half years of college. Immediately after accepting applicant's plea of guilty, the judge asked the following:

"... Is there any doubt in anyone's mind what the obligation of the defendant are (sic) as far as having the total of $10,100.00 satisfied, the $5,000.00 fine paid by that date, $5,100.00 to the Lam-

**950**

passas Cattle Company satisfied at that time to receive the recommendation for probation from the State, otherwise the State will argue in favor of confinement in the Texas Department of Corrections. Is there any doubt in anybody's mind about that?"

The applicant did not raise a question as to the terms of the agreement at that time. Furthermore, no testimony was presented at the evidentiary hearing for this writ to show that applicant was not aware that he would be sent to TDC if he could not pay the restitution and fine. Applicant's argument is without merit.

The dissent argues that the record does not clearly reflect that applicant understood his obligations or that the conditions of the agreement were clear to the parties. A reading of this entire record leaves little doubt that all the parties understood the agreement. This understanding is demonstrated in numerous places throughout the record. Even at the time of sentencing, the applicant, his attorney, the prosecutor, and the court were all in agreement to the conditions:

"THE COURT: In regard to No. 9443–B, The State of Texas vs Joe Ed Williams, what says the State?

"MR. GAGE: (Prosecutor) Your Honor, the State is ready.

"THE COURT: What says the Defense?

"MR. PEARL: (Defense Attorney) We are ready to proceed at this time, Your Honor.

"THE COURT: Very well. Now, it is my recollection that the plea bargaining was somewhat unusual in this matter. When it was originally entered into the defendant took the position that if he could pay the restitution to Lampassas Cattle Company of some four to five thousand dollars and a five thousand dollar fine on or before thirty days from the 11th of May, 1981, which would have been about the 10th of June, then he would be granted ten years probation and if he couldn't it would be ten years hard time. Is that understanding correct, sir?

"MR. PEARL: Yes, sir.

"THE COURT: I need you to answer your response.

"MR. PEARL: Yes, sir, it is. It is my understanding the Lampassas Cattle has been satisfied with their restitution but the five thousand dollar fine is still—

"MR. GAGE: Your Honor, I would like to—

"THE COURT: Excuse me, gentlemen, may I proceed with what I am saying if you don't mind a whole lot?

That on June 10th or thereabout we had a hearing in this Court, June 12th it turned out to be, we had a hearing in this court at which time the defendant filed his first motion for continuance on the matter of sentencing. At that time the defendant advised the court that the defendant had been unable to get the money together and requested another week, is that correct, Mr. Pearl?

"MR. PEARL: That is correct, Your Honor.

"THE COURT: And had the State at that time completely complied with its end of the plea bargaining agreement?

"MR. PEARL: As far as I know, Your Honor.

"THE COURT: And the Court then said would two weeks be enough and I think the response was, 'Golly, yes, two weeks would be super,' and I said I will give you a month and reset it July 9th, this morning, at 9:00 a.m. and you were unable to be here at 9:00 and the Court held off until 1:00 o'clock this afternoon and it is now six minutes past 2:00 on the afternoon of July 9th, is that correct, Mr. Pearl?

"MR. PEARL: That is correct.

"THE COURT: Now, has your client, the defendant, Joe Ed Williams brought in the five thousand dollar fine in accordance with the plea bargaining agreement?

"MR. PEARL: He has not, Your Honor. Basically we have the same problems we had at the last hearing on sentencing which is to say the land has not

been—the people who were going to loan the money against the land are not satisfied as to the title, as we had to sell—you know it is a homestead property, Your Honor, and it had to be separated to follow the proper procedure and it has not been effectuated, the title company has not yet come up with sufficient guarantee of title to the person who is going to make this loan.

"THE COURT: Then it is appropriate at this time for the Court to go forward with the sentencing of ten years in the Texas Department of Corrections.

"MR. PEARL: Your Honor, with great trepidation, I guess, I would urge again if the ends of justice were to be served and the plea bargaining would be served by some other means than sentencing Mr. Williams to the Texas Department of Corrections at this time. I would suggest Mr. Williams be incarcerated here in the county jail a week or so to see if this thing can go through as promised to the Court.

"THE COURT: Mr. Pearl, first of all this Court is always greatly disturbed when it has to send one to prison regardless of the nature of the crime for which he stands convicted. Kindly interrupt me if I am in error. This defendant has pleaded guilty, has been admonished and given the range of punishment in this cause, is that correct?

"MR. PEARL: That is true.

"THE COURT: And the plea bargaining referred to and reduced to writing I thought in this matter. It was at least orally agreed to, just off the top of my head—

"MR. GAGE: It was not reduced to writing.

"THE COURT: It was not reduced to writing but merely orally agreed. All right. The record will reflect whatever it was, but whatever it was has the State done everything it was supposed to do over thirty days ago?

"MR. PEARL: Yes, sir.

"THE COURT: Is there anything that remains undone by the State?

"MR. PEARL: Not that I know of.

"THE COURT: Is there anything that remains undone by the defendant?

"MR. PEARL: Yes, sir.

"THE COURT: As a result of what he had done, or not done I should say, what is the appropriate penalty under the plea bargaining agreement?

"MR. PEARL: Ten years in the Texas Department of Corrections.

"THE COURT: Without probation, right, isn't that correct?

"MR. PEARL: That is my understanding of the plea bargaining.

"THE COURT: Very well. Is that yours, Mr. Williams?

"THE DEFENDANT: *Yes, sir.*"

(Emphasis added)

If anything, this record demonstrates that the applicant got much more than he bargained for.

Furthermore, applicant argues the trial court incorrectly admonished applicant that the maximum sentence to which he could be sentenced was ten years. This argument is also frivolous. The statement of facts from the hearing at which the guilty plea was taken contains the following admonishment:

"THE COURT: Very well, sir. You understand a person found guilty of a felony offense of theft of more than $10,000.00 may be punished by confinement in the Texas Department of Corrections for a period of years not less than two nor more than twenty and a fine of up to $10,000.00.

"THE DEFENDANT: Yes, Sir.

"THE COURT: Understanding that range of punishment, do you persist in your plea of guilty?

"THE DEFENDANT: Yes, Sir."

Additionally, applicant makes another frivolous argument when he asserts that the prosecutor promised that the court could be bound by the plea bargaining agreement. The statement of facts clearly refutes that allegation:

"THE COURT: Now, do you understand, Mr. Williams, that this Court is not

bound or obligated to follow any recommendation that the State may make in regards to punishment in this matter?

"THE DEFENDANT: Yes, Sir."

We hold that applicant has not shown that the plea was involuntarily entered. We have examined all the circumstances surrounding the plea bargain agreement and hold that it was voluntarily entered into by applicant. *Brady v. United States,* supra.

■ Applicant's sixth ground alleges that he was deprived of effective assistance of counsel as guaranteed by the Sixth Amendment when his retained counsel permitted him to enter into the allegedly illegal, void and unconstitutional plea bargain agreement. Effectiveness of counsel must be gauged by the standard of "reasonably effective assistance of counsel." *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980). We have already held that the plea bargain agreement was not illegal, void or unconstitutional. There was no evidence presented at the evidentiary hearing that supports applicant's allegation of ineffective assistance of counsel. Under the particular facts of the instant case, we reject applicant's claim of ineffective assistance of counsel. Applicant's sixth ground of error is overruled. *Mercado v. State,* 615 S.W.2d 225 (Tex.Cr.App.1981).

■ Finally, applicant argues that the sentencing procedure used in this case violates public policy. We disagree. Plea bargaining is an important part of the criminal justice system. This sentencing procedure grew out of a plea bargain agreement "contracted" to knowingly and voluntarily by applicant. We overrule applicant's final ground.

Applicant's application is denied.

CLINTON, Judge, dissenting.

The majority opinion demonstrates verity of that old saw that hard cases make bad law. Likening a plea bargain agreement to a "contract," the majority carefully places the term within quotation marks, thereby qualifying the likeness. But whatever a negotiated plea is, certainty in its terms and conditions is surely a touchstone to a clear understanding of consequences of the plea. The majority states its own understanding, but let us determine, if we can, what the parties to the "contract" understood.

During the course of admonishing applicant the trial judge indicated his awareness of an agreement [1] and asked attorney for applicant [2] "to recite what that plea bargaining is in the record."

"MR. PEARL: As I understand, sir, Mr. Gage and I have entered into negotiations which resulted in that Mr. Williams would plead guilty to this indictment in return for a two-tiered recommendation. That is if Mr. Williams can pay a $5,000.00 fine within thirty days from this day or the time the Court would set for his punishment phase that the DA would recommend ten years probation in this case and if Mr. Williams isn't able to perform that he recommends ten years confinement in this case."

To be noted immediately is that the understanding of the agreement stated by applicant's own counsel is not what the majority opinion states the agreement to be. He made no mention whatever of restitution to Lampassas Cattle Company in the amount of $5,100, nor assessment of a $5,000 fine in the judgment of the trial court if not earlier paid.

Whereupon the judge reprised:

"What you are saying is a $5,000.00 fine—the State recommends a $5,000.00 fine and ten years in Huntsville. Now, in the event he pays the fine *and pays*

1. The only thing we know about who initiated negotiations for a plea bargain is from a chance remark by the prosecuting attorney made during the July 9, 1981 sentencing proceeding that "[a]s a result of defendant's request plea bargaining was entered into . . ."

2. Thomas Pearl, Esq., of Travis County represented applicant at the time. Applicant is presently represented by Robert E. DeLong, Jr., of Walker County. Mr. Gage, soon to be alluded to, is Robert W. Gage, County Attorney of Freestone County.

*$5,100.00 and satisfies the Lampassas Cattle Company with $5,100.00 in some fashion that is recognizable by the Court,* then the State will further recommend the punishment be probated for ten years?[3]

\*   \*   \*   \*   \*   \*

The confinement be probated for ten years. Is that your plea bargaining agreement?

MR. PEARL: Yes, it is.

THE COURT: And if he does not pay the $5,000.00 fine and satisfies the Lampassas Cattle Company as to the $5,100.00 loss they suffered as a result of this occurrence out of which the indictment grew, then the State will not make the recommendation for probation. Is that your understanding of the plea bargaining agreement?

MR. PEARL: That is correct, Your Honor."

The court obtained from applicant an acknowledgement that what had been stated was "the totality of it." Then he turned to the county attorney for an expression of *his* understanding. Prefacing it with an observation that Mr. Pearl did not use "exactly the words I would use," Mr. Gage stated:

"The defendant today will plead guilty to the second degree offense of theft. It might be a little different, if the Court finds him guilty and assesses his punishment at ten years confinement and a $5,000.00 fine, but withhold the sentencing and decision as to whether to probate the ten years or to assess punishment, the sentencing phase at least thirty days, the first time after thirty days. At that time if the five thousand is in hand and the Lampassas people have been satisfied the State will recommend probation, if it has not been the State will recommend ten years confinement in the Texas Department of Corrections."

3. All emphasis is mine unless otherwise indicated.

4. Indeed, the record of the July 9, 1981 proceeding shows that following allocution the trial court stated:

Strictly speaking, then, no one had articulated precisely the status of "a $5,000 fine" in event applicant did *not* fully perform the conditions imposed on him in order to obtain a recommendation of probation.

Almost as an afterthought did attorney for applicant point out that the two enhancement paragraphs would be dismissed. The trial judge then endeavored to sum up, *viz:*

"THE COURT: Now, everybody has had a chance to recite the plea bargaining agreement except the Court, since the Court has got to do it let me see if I understand. The plea of guilty in exchange for a $5,000.00 fine and ten years confinement in the Texas Department of Corrections. We will reset sentencing for thirty days hence, and if at that time the defendant has without excuse paid the $5,000.00 fine and satisfies the Lampassas Cattle Company the $5,100.00 they lost as a result of this exercise, then the State will recommend probation, otherwise there will be no recommendation for probation, the man *will still have the $5,000.00 fine* and ten years to do, is that correct?"

There was not expressed affirmation by counsel—none at all by applicant. Other than to correct the impression that the State would abstain from recommending punishment, by pointing out he would affirmatively recommend "ten years to do," the county attorney and attorney for applicant indicated there was not "anything else as to the plea bargaining agreement that the Court be advised of at this time."

Though the docket sheet notation reads as set out in the majority opinion in its note 1, neither the written judgment of the trial court nor the written sentence, respectively signed July 9, 1981, make mention of a fine in any amount.[4]

"Let the record reflect that the defendant has heretofore upon plea of guilty been found guilty of the felony offense of theft..., *punishment was assessed* at confinement in the Texas Department of Corrections for a term of ten years. Therefore you are remanded... to be forthwith delivered... and there-

So far, then, manifestly, terms of the purported plea bargain agreement were altered in one respect or another each time someone undertook to state them, especially with regard to applicant's continuing liability for payment of a fine of $5,000; its omission from the judgment of the trial court became a point of discussion during the habeas hearing, *viz:*

> "MR. DeLONG: I cannot find the $5,000.00 fine anywhere in the judgment.
> THE COURT: I don't believe it is in there, that is Mr. Gage's point, you see, *the fine was not part of the punishment, the restitution was part of the punishment,* but his bargain was if he made the restitution and paid the fine, then he would have ten years probated." [5]

In a few moments, presumably having perused the judgment, County Attorney Gage frankly recanted his assertion that the fine had been assessed in the judgment, but then opined:

> "[I]t was a two-pronged plea bargaining, satisfaction of Lampassas Cattle Company and a $5,000.00 fine, either of which not being satisfied calls for a ten year sentence. Certainly the *restitution is not a punishment,* it is the term and condition of probation if probation is granted, or, as in this case, a part of the plea bargaining agreement. So in any event regardless of whether or not the $5,000.00 should be in the judgment and whether or not in the Court's sentence it is appropriate to impose the $5,000.00, it still leaves the unsatisfied portion of the plea bargaining agreement, that being *the notarized statement of satisfaction of Lampassas Cattle Company* until restitution was made."

So, months after the fact we learn of a belief by one party that there was yet another aspect of the purported "contract." [6]

The majority approaches solution of the problems presented in this cause on the premise that the key is to find in the plea bargain agreement that which applicant was to do, as the majority understands it, and whether applicant understood his obligations as the majority finds them. But that approach seems to presume that all other terms and conditions of the bargain are certain enough to provide a clear understanding of consequences to applicant if he did *not* perform as the majority believes he was obligated to do. As demonstrated, however, even now the record is far from certain and clear. Still, the majority resolves the problems on the rationale that applicant "knowingly and voluntarily entered into a 'contractual' situation"— whether he did so intelligently, in the sense that he understood its full consequences, is not addressed.

The purpose of cautioning an accused through the statutorily prescribed admoni-

---

by be confined in the Texas Department of Corrections for a term of not less than two years nor more than ten years in accordance with the law and provisions of law..."
Thus, notwithstanding the earlier colloquys when the plea was entered, a fine was neither assessed nor imposed.

5. Till this good day applicant personally probably does not know, and in its note 2 the majority fails to reveal, that the July 9, 1981 docket entry it mentions recites that the $5,000 fine is "*to be collected as term of parole.*"

6. At the outset of the July 9, 1981 sentencing hearing, Mr. Pearl advised the court, "It is my understanding the Lampassas Cattle has been satisfied with their restitution but the five thousand dollar fine is still—" but was interrupted by Mr. Gage with: "Your Honor, I would like to—" who in turn was interrupted by the trial judge. Later on Mr. Gage managed to say what was probably on his mind; that is, that "I have not seen that, by the way," referring to "some form of affidavit tendered." Certainly, Mr. Pearl was under the impression that the Lampassas Cattle Company had been satisfied, for he represented "there is approximately one thousand dollars on deposit in the Clerk's office having to do with another matter" and suggested that applicant be confined in the Freestone County Jail "to see if the last of this four thousand dollars can come in as it was supposed to." When the court moved on to impose sentence and extended allocution, applicant first tried to "dismiss" Mr. Pearl and change his plea; then he also demonstrated that he too believed the matter of restitution "was supposed to have been disposed of" by his having paid $5,100.00 and transferred to the company "four cows and four calves... which put [the company] somewhere in the vicinity of $10,000.00 profit they claim as a loss."

tion before accepting a plea of guilty, Article 26.13, V.A.C.C.P., "is to insure that the defendant entered his plea with full knowledge of its consequences," and its function is to make "[a]n affirmative showing of such knowledge [that] is constitutionally required as well. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)." *Whitten v. State*, 587 S.W.2d 156, 158 (Tex.Cr.App.1979). Given the state of the record before us, I cannot safely say the statutory purpose was accomplished and the constitutional requirement discharged.

Accordingly, I would grant relief. Since the Court does not, I respectfully dissent.

ONION, P.J., and ROBERTS, J., join.