Opinion filed November 21, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00324-CR

_____

**SHERRY ANN WEEKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 39th District Court**

**Stonewall County, Texas**

**Trial Court Cause No. 1886**

## M E M O R A N D U M   O P I N I O N

The jury convicted Sherry Ann Weeks of the lesser included offense of theft of property of the value of $500 or more but less than $1,500. Prior to sentencing, Appellant and the State agreed to the terms of punishment, and in accordance with the agreement, the trial court assessed Appellant's punishment at confinement for

one year, but suspended the imposition of the sentence and placed Appellant on community supervision for two years. The trial court also ordered Appellant to pay restitution and court costs, including the cost of Appellant's court-appointed attorney. In four issues, Appellant challenges the sufficiency of the evidence to support her conviction, the rejection of her mistake-of-fact defense, the compostion of the grand jury, and the trial court's assessment of costs. We affirm.

Cindy Hill hired Appellant to do work on several different properties that Hill either owned or leased. In her job with Hill, Appellant worked as a gardener, cared for dogs, maintained a hunting cabin, cooked for the hunters who rented the cabin, helped with cattle, and cleaned out barns. When Appellant told Hill that she was scrapping junk iron for extra money, Hill told Appellant that she could have all of her junk iron. Appellant and her friend, Ken Hayes, took iron from several properties owned by Hill and sold it as scrap iron.

Hill leased some property from George Charles Abernathy. The property was known as the "sewer farm"; the City of Aspermont used a part of the property to maintain their sewer system. A 1950s era tractor was on the property. There is evidence in the record that Appellant and Hayes spent three days digging the tractor out of the mud so that they could sell it for scrap.

On the first day that Appellant and Hayes began to dig the tractor out of the mud, Roy Hernandez, a City of Aspermont employee, was on the property working on the City's sewer system. Appellant talked to Hernandez to find out why he was there. During that conversation, Appellant mentioned to Hernandez that she was there to check fences for Hill.

After three days of digging, Hayes finally got the tractor out of the mud. He took the tractor to a scrap yard to sell it. However, while in the parking lot of the scrap yard, he ran into Toby Wetzel, a man who dealt in old tractors. Wetzel bought the tractor from Hayes for $700.

2

Hernandez notified Abernathy that the tractor had been taken from the sewer farm property. After Abernathy reported the theft to law enforcement authorities, Stonewall County Sheriff Bill Mullen discovered that someone had sold a similar tractor in the parking lot of a nearby scrap yard to a man named Toby Wetzel. Wetzel told Sheriff Mullen that Hayes still had possession of the tractor because Wetzel did not have a trailer to bring it home when he bought it, and Wetzel called Hayes to find out where the tractor was located at that time. Sheriff Mullen found the tractor and seized it.

In her first issue, Appellant challenges the sufficiency of the evidence to establish that she unlawfully appropriated the tractor. We review both legal and factual sufficiency claims under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We apply the *Jackson* standard of review in criminal cases when we review the evidence supporting the elements of the offense that the State must prove beyond a reasonable doubt. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).

The offense of theft occurs when a person unlawfully appropriates property with the intent to deprive the owner of that property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2013). The appropriation is unlawful when it is without the owner's effective consent. *Id.* § 31.03(b)(1). Intent at the time of the incident is usually proven through circumstantial evidence and must generally be inferred from the surrounding circumstances. *Hernandez v. State*, 819 S.W.2d 806, 810

(Tex. Crim. App. 1991). When the jury is charged on the law of parties, as in this case, we may look to events that occurred before, during, or after the commission of an offense and may infer participation from the circumstances. *Beardsley v. State*, 738 S.W.2d 681, 683 (Tex. Crim. App. 1987). "Circumstantial evidence may be sufficient to show that [a person] is a party to an offense." *Id.* at 684.

Here, the owner of the tractor testified that he had not given anyone permission to remove the tractor. Before removing the tractor, Appellant told Hernandez that she was mending a fence for Hill, but Hernandez never saw them working on a fence. Hernandez testified that, in his opinion, the situation was "suspicious." While the evidence shows that Hayes loaded and sold the tractor, there is also evidence that Appellant received half of the money from the proceeds of the sale of the tractor. *See Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("In determining whether the defendant had criminal intent to commit theft, we may consider whether the defendant experienced personal gain from the property obtained from the complainants."). Further, as the State argues, the jury saw pictures of the tractor and could have concluded that Appellant could not have reasonably believed that the intact tractor would be in the same category as junk iron.

After viewing all of the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Appellant, as a participant or as a party, appropriated the tractor without the consent of the owner and with the intent to deprive the owner of the property. Accordingly, Appellant's first issue is overruled.

Appellant's second issue concerns the sufficiency of the evidence to support the jury's rejection of her defense of mistake of fact. Appellant argues that she affirmatively established that she mistakenly believed that Hill owned the land and that Hill had given her permission to remove the tractor.

4

Mistake of fact is a defense to prosecution. TEX. PENAL CODE ANN. § 2.02, 8.02 (West 2011). It is not an affirmative defense that the defendant must prove beyond a reasonable doubt. *Id.* §§ 2.03, 2.04; *see also Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991) (distinguishing between defenses upon which the State carries the burden of persuasion and affirmative defenses upon which the defendant bears the burden of proof). Once the defendant offers some evidence to support his defense, the State has the burden of persuasion to disprove the defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913–14. The burden of persuasion does not require the production of evidence but, instead, requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. The jury's finding of guilt is an implied finding against the defensive theory. *Zuliani*, 97 S.W.3d at 594. When an appellant challenges the sufficiency of the evidence involving the defense of mistake of fact, we must view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found against the appellant on the mistake-of-fact issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914.

Because we have already concluded that a rational jury could have found beyond a reasonable doubt that Appellant appropriated the tractor without the consent of the owner and with the intent to deprive the owner of the property, we also conclude that a rational jury could have found against Appellant on the mistake-of-fact issue beyond a reasonable doubt. Appellant's second issue is overruled.

In her third issue, Appellant contends that her "conviction should be reversed and the indictment dismissed because one of the grand jurors who returned the indictment was a fact witness for the prosecution against [Appellant] and thus biased against her." The State argues that Appellant waived this issue

5

when she failed to challenge the array before the grand jury was impaneled and, alternatively, when she failed to move to quash the indictment before trial.

"Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard." TEX. CODE CRIM. PROC. ANN. art. 19.27 (West 2005). The Court of Criminal Appeals has interpreted this article to mean that the array must be challenged at the first opportunity, which typically means at the time the grand jury is impaneled. *Muniz v. State*, 573 S.W.2d 792, 796 (Tex. Crim. App. 1978) (citing *Valdez v. State*, 408 S.W.2d 109 (Tex. Crim. App. 1966)). If the offense was committed after the grand jury was impaneled or if the accused has not had an opportunity to challenge the array, the accused may challenge the grand jury by moving to quash the indictment. *Ex parte Covin*, 277 S.W.2d 109, 111 (Tex. Crim. App. 1955).

The record shows that the grand jury that returned the indictment against Appellant was impaneled after the date of the offense. Thus, Appellant had the opportunity to challenge the grand jury before it was impaneled. The record does not show that Appellant sought to challenge the array or that she was deprived of that opportunity. Appellant argues that she "had no way of knowing, before or during her trial, that [the witness] had served on her grand jury" and contends that her "first opportunity to complain" is on appeal. Appellant's argument is not rooted in the record but, instead, a conclusion or an explanation for why she failed to challenge at the first opportunity. Although we note that the trial court did not appoint counsel to represent Appellant until after the grand jury was impaneled, the record reveals that Appellant never moved to quash the indictment. Because Appellant failed to lodge any challenge to the grand jury prior to trial, she has failed to preserve this issue for our review. Appellant's third issue is overruled.

In her fourth issue, Appellant complains that, because "[t]here was no evidence presented that [her] financial circumstances materially changed after the court's initial finding of indigency," it was error to order Appellant to pay "for court-appointed attorney's fees, expert witness fess, storage costs, restitution or other costs." The State responds that Appellant "entered into a plea bargain" for sentencing; "indicated that she agreed to [the] terms"; and, thus, "cannot now complain about the terms of the agreement."

Appellant is correct that there is a presumption of indigence unless there is a material change in the defendant's finances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2013). Appellant's contention, however, ignores the fact that she agreed to pay certain fees as a term of the agreement reached with the State. "Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). "In the give-and-take of plea bargaining, the State cannot unilaterally impose an unconstitutional punishment so long as the accused is free to accept or reject the prosecution's offer." *Ex parte Williams*, 637 S.W.2d 943, 948 (Tex. Crim. App. 1982) (orig. proceeding). "A plea agreement is generally considered a contractual agreement between the state and a defendant that is presumed to have been knowingly and voluntarily entered into unless the defendant can show otherwise." *State v. Wilson*, 324 S.W.3d 595, 599 (Tex. Crim. App. 2010). The terms of a plea bargain agreement are left to the parties, and once the accused agrees to the terms and the trial court accepts the plea bargain, the agreement is a binding and enforceable "contract." *Williams*, 637 S.W.2d at 947 (citing *Jones v. Estelle*, 584 F.2d 687, 689 (5th Cir. 1978)).

We note that Appellant challenges the trial court's authority to order the payment of certain costs but does not challenge the amount that the court ordered her to pay. The record shows that, after the jury's verdict but before sentencing,

7

Appellant and the State reached an agreement on the terms of punishment. According to their agreement, the trial court was to set Appellant's sentence at confinement for one year in the county jail, suspend imposition of the sentence, and place Appellant on community supervision for two years. Appellant also agreed to pay her attorney's fees and the fee for the expert witness. In addition, she agreed to reimburse Wetzel for the $700 he paid for the tractor, pay for the cost to store the tractor until trial, and pay "any cost associated with this trial." Without any evidence in the record that indicates otherwise, we conclude that Appellant knowingly and voluntarily entered into a contract and got that for which she bargained. Appellant's fourth issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


November 21, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.