In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00316-CV
_____

IN RE COMMITMENT OF EDWARD LAMOND COX

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-10-10525-CV

## MEMORANDUM OPINION

The State of Texas filed a petition to commit appellant Edward Lamond Cox as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013). A jury found that Cox is a sexually violent predator, and the trial court signed a final judgment and an order of civil commitment. In four appellate issues, Cox challenges the trial court's failure to strike expert testimony, the trial court's refusal to permit Cox's counsel to ask "a proper commitment question" during voir dire, and the constitutionality of the SVP statute, both under Article 1, section 16 of the Texas Constitution, and on

1

vagueness grounds. We affirm the trial court's judgment and order of civil commitment.

## ISSUE ONE

In his first issue, Cox argues the trial court reversibly erred "by failing to strike the unsupported testimony of Dr. Michael Arambula[.]" Specifically, Cox complains that Arambula's testimony does not meet the standards for scientific reliability, Arambula's "methodology is flawed and unsupported," Arambula's testimony was biased and misleading, Arambula "claims ignorance of the seminal case law controlling civil commitment[,]" and Arambula provided insufficient information to distinguish Cox from "the dangerous but typical recidivist convicted in an ordinary criminal case."

Arambula testified that he holds board certifications in both general psychiatry and forensic psychiatry, and he explained that he participated in a sexual behaviors clinic, in which he learned about treating and evaluating sex offenders, as well as how to manage the risk sex offenders pose to the community. Arambula explained that his testimony was within the scope of forensic psychiatry, and that he relied upon principles of forensic psychiatry while evaluating Cox. Arambula estimated that he had performed approximately eighty behavioral abnormality evaluations during the last seven years. According to Arambula, a

2

behavioral abnormality is an acquired or congenital condition that affects a person's emotional or volitional capacity, causing them to become likely to engage in predatory acts of sexual violence and become a menace to the health and safety of others.

Arambula explained that in conducting evaluations to determine whether a person is a sexually violent predator, he reviews medical, mental health, and administrative records, as well as "a section that has to do with the sexual offenses," and then he interviews the person. Arambula testified, "I'm comfortable saying all forensic fellowship-trained physicians would do the same thing." Arambula stated that he followed the same methodology when evaluating Cox, and he also reviewed actuarials. Arambula explained that he cannot calculate a rate of error in such cases, but he opined that based upon physicians' training regarding what to look for, there is probably a ninety to ninety-five percent degree of certainty. According to Arambula, two of the greatest risk factors are sexual deviance and antisocial personality, and there are other factors such as age at the time of the first sexual offense, lack of treatment, and the presence of denial.

Arambula testified that he interviewed Cox for approximately two-and-a-half hours, and he explained that based upon his education, experience, and the methodology he followed, he determined that Cox has a behavioral abnormality

3

that makes him likely to engage in a predatory act of sexual violence. According to Arambula, Cox has "a hefty dose of antisocial personality" and elements of sexual deviance. Arambula explained that antisocial personality disorder entails "breaking the rules of society, aggression towards others, stealing, lack of responsibility, callousness, those kinds of things." Arambula explained that Cox's criminal versatility, consistent disregard for others, failure to accept responsibility, blaming his victims, and aggressive behavior evidenced antisocial personality disorder. Arambula testified that Cox was "an agent for women who engaged in prostitution[,]" and that some of the prostitutes were underage. Arambula testified that Cox was convicted of trafficking, *i.e.*, "forcing a young girl into the trade of prostitution."

Arambula explained that Cox engaged in sexual acts with minors, and that Cox did not accept responsibility for his offenses. According to Arambula, Cox was on probation for the trafficking offense when he was charged with aggravated sexual assault and indecency with a child, and Cox pleaded guilty to aggravated sexual assault and indecency with a child. Arambula testified that Cox's inability to successfully complete probation is a risk factor, as is the fact that Cox's victims were strangers and Cox's belief that he does not need sex offender treatment. Arambula explained that although he does not score actuarials, he considered

4

Cox's actuarial scores in performing his evaluation. According to Arambula, Cox's actuarial scores indicate that he is at high risk for sexual recidivism. Arambula also testified that Cox scored high on the Hare Psychopathy Checklist, which measures the degree of antisocial personality an individual possesses.

Arambula explained that the fact that Cox's victims were minors and were strangers, as well as the fact that Cox "include[ed] them in his profession[,]" evidenced Cox's sexual deviancy. Arambula also identified as risk factors Cox's denial and minimization of his offenses, as well as his demeaning attitude toward women and his lack of job skills. Arambula opined that Cox's emotional or volitional capacity has been affected to the extent that it predisposes him to commit a sexually violent offense. Arambula characterized Cox as "a particularly dangerous type of sex offender." According to Arambula, denial is characteristic of both Cox's antisocial personality disorder and Cox's sexual deviancy.

During cross-examination, Arambula testified that he does not consider the DSM to be an authoritative source, and he described it instead as "an important resource[.]" When asked whether he had cited any documentation in support of his opinion concerning Cox, Arambula testified, "I mentioned the DSM, as it relates to paraphilia diagnoses." Arambula explained that he viewed the DSM as

5

insufficiently comprehensive because it does not describe "the full breadth of the mental conditions, only the criteria."

Counsel then inquired about "documentation or publications that bridge that analytical gap[,]" and Arambula explained that it is difficult "for one publication to cover all mental conditions with that type of breadth and comprehensiveness." Arambula explained that the information and methodology he uses to evaluate individuals comes from his fellowship, which was twenty years ago. According to Arambula, during the twenty years since his fellowship, some things "remain the same thing and some changes . . . have emerged in the literature[.]" Arambula testified that

> [a]s it relates to this case, there weren't any particular textbooks or articles that were different from before . . . . And instead, I just relied upon . . . the foundation of how I had been trained and the textbooks that were published subsequent to my training and the articles that I read having to do with sexual offenses, sexual offense recidivism. And so I keep up with the literature as it emerges . . . .

Arambula testified that the analytical gap is covered "as a result of my training and the information that I have in my brain all the time." Arambula explained,

> [t]he information that I use in evaluating sexual dangerousness is based, first and foremost, on the methodology that I was taught during my fellowship. . . . Since then, there have been subtle changes in the degree that a certain risk factor carries, but by and large, in the last 20 years, what's really changed more than anything else in the sex offender literature is how sex offenders are treated.
> . . .

> The static risk factors . . . really don't change over time . . . . So there's not been significant change in evaluating risk for recidivism. There have been some changes, but not as much as in the treatment literature.

Arambula testified that he has not conducted studies on sex offender recidivism or published any articles or textbooks on the subject. According to Arambula, "*Daubert* would apply to the statistical findings in capturing and paying attention to what the important risk factors are[,]" as well as "to the methodology and the validity of running scientific experiments upon which statistical analyses are attached."

Cox argues that Arambula's testimony is unreliable and failed to bridge the analytical gap between his opinions and the data on which he relied, and that the trial court therefore erred by denying Cox's pretrial motion to strike Arambula's testimony. Conclusory or speculative testimony is not relevant evidence, and bare, baseless opinions cannot support a judgment. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). We review a trial court's denial of a motion to strike for abuse of discretion. *Harris Cnty. Appraisal Dist. v. Hartman Reit Operating P'ship, L.P.*, 186 S.W.3d 155, 157 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Arambula is licensed in his field, and he explained the methodologies he employed when determining whether Cox suffers from a behavioral abnormality.

Arambula explained that he conducted his evaluation in accordance with his training and the accepted standards for his field. Arambula testified that he interviewed Cox in accordance with his training and reviewed and relied on the types of records used by experts in his field, including actuarials and records regarding Cox's background, offenses, and incarceration. Arambula explained in detail the facts and evidence relevant in forming his opinion and how those facts played a role in his evaluation. Arambula concluded that Cox suffers from a behavioral abnormality as defined by the SVP statute. Arambula's testimony is not so conclusory as to be completely lacking in probative value, nor is it unreliable or unsupported. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *14 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). We overrule issue one.

## ISSUE TWO

In his second issue, Cox contends the trial court erred by preventing him from asking a proper commitment question regarding sex with underage females, thereby preventing him from properly exercising his peremptory strikes. We apply an abuse of discretion standard to the trial court's decisions regarding voir dire. *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011); *In re Commitment of Larkin*, 161 S.W.3d 778, 781 (Tex. App.—Beaumont 2005, no pet.).

8

During voir dire, Cox's counsel asked, "If you hear the word pedophilia brought up in this particular case[,] how many of you will not be able to . . . listen to the law, listen to the facts, all the facts, and follow the law as the Judge gives it to you before rendering a verdict?" The State objected that "[a]sking them to commit to certain questions about the facts of the case, it's a commitment question." The trial court asked Cox's counsel whether he desired to rephrase his question, and after commenting that his first question "was probably a proper commitment question[,]" Cox's counsel then asked, "If you were to hear that someone had sex with an individual who was underage, . . . how many of you would not be able to listen to all of the facts . . . and the law as the Judge gives it to you before rendering a proper verdict?" The State again objected, and the trial court sustained the State's objection. Cox's counsel objected, "[f]or the record, we object to your rulings, Your Honor."

Because a prospective juror is disqualified from serving on the jury when biased or prejudiced for or against a party, one purpose of voir dire is to find biased jurors and eliminate them from the jury panel. *In re Commitment of Barbee*, 192 S.W.3d 835, 845 (Tex. App.—Beaumont 2006, no pet.); *see* Tex. Gov't Code Ann. § 62.105(4) (West 2013). The trial court should allow a party broad latitude to discover bias or prejudice by potential jurors. *Larkin*, 161 S.W.3d at 780. The trial

9

court abuses its discretion when it denies the right to ask a proper question, preventing determination of whether grounds exist to challenge for cause or denying intelligent use of peremptory challenges. *Id*. at 783. "Counsel's latitude in voir dire, while broad, is constrained by reasonable trial court control." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 750 (Tex. 2006).

In this case, the State's expert did not diagnose Cox with pedophilia. Instead, the issue Cox identifies as significant to his voir dire of the venire panel is his sexual contact with teenage females and placing them into prostitution. Cox's counsel's question isolated one condition, *i.e.* pedophilia, and sought to gauge its potential impact on the venire panel. *See id*. at 756-57. The trial court could reasonably have concluded that Cox was suggesting that to be fair, the jury must not decide the case based on an irrelevant fact, and that the substance of the proposed question did not present a proper basis for juror disqualification. *See id*.; *In re Commitment of Smith*, No. 09-13-00100-CV, ___ S.W.3d ___, 2014 WL 333374, at *4 (Tex. App.—Beaumont Jan. 23, 2014, pet. filed) (not yet released for publication); *but see In re Commitment of Kalati*, 370 S.W.3d 435, 441 (Tex. App.—Beaumont 2012, pet. denied) (in which Kalati was diagnosed with pedophilia and this Court held that the trial court erred by failing to permit a question on pedophilia). We therefore overrule issue two.

10

## ISSUE THREE

In issue three, Cox argues that chapter 841 of the Health and Safety Code violates Article 1, section 16 of the Texas Constitution. Specifically, Cox contends that when he entered into plea agreements with the State concerning his underlying convictions, one of the terms of the plea agreement was that, upon his date of release, he would be free to return home, and the State's imposition of civil commitment impairs his existing contracts with the State.

A plea bargain agreement is a contract between the prosecutor and the defendant, in which the prosecutor makes concessions regarding specific punishment or reduced charges in exchange for the defendant's plea of guilty. *Hoang v. State*, 872 S.W.2d 694, 698 (Tex. Crim. App. 1993); *Ex parte Williams*, 637 S.W.2d 943, 947 (Tex. Crim. App. 1982). SVP commitment cases are civil matters, and the SVP statute is not punitive. *In re Commitment of Fisher*, 164 S.W.3d 637, 653 (Tex. 2005); *Beasley v. Molett*, 95 S.W.3d 590, 608 (Tex. App.—Beaumont 2002, pet. denied). Therefore, it is axiomatic that the terms of Cox's civil commitment are not part of his plea-bargained punishments for the underlying offenses. *See Fisher*, 164 S.W.3d at 653; *Beasley*, 95 S.W.3d at 608; *Hoang*, 872 S.W.2d at 698; *Williams*, 637 S.W.2d at 947. Accordingly, chapter 841 does not

interfere with existing contracts concerning punishment for Cox's underlying offenses. We overrule issue three.

## ISSUE FOUR

In his fourth issue, Cox asserts that chapter 841 of the Health and Safety Code "is unconstitutional in that it is vague[.]" We have previously addressed this issue in other cases. *Beasley*, 95 S.W.3d at 607-10; *In re Commitment of Morales*, 98 S.W.3d 288, 291 (Tex. App.—Beaumont 2003, pet. denied); *In re Commitment of Mullens*, 92 S.W.3d 881, 883-84 (Tex. App.—Beaumont 2002, pet. denied). For the same reasons set forth in those cases, we overrule Cox's fourth issue. Having overruled each of Cox's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on February 27, 2014
Opinion Delivered April 10, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.