**Mark ZAPATA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–02–00763–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 3, 2003.

Kimberly S. Keller, Keller Group, Jimmy Parks, Jr., Law Office of Jimmy Parks, Jr., San Antonio, for appellant.

Mary Beth Welsh, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and KAREN ANGELINI, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Both parties address the issue of this court's jurisdiction to decide the merit of the complaints raised by appellant Mark Zapata ("Zapata"). Zapata claims that this court has jurisdiction to consider his appeal because the limitations contained in former rule 25.2(b)(3)[1] are not applicable to his appeal. The State responds that Zapata's appeal should be dismissed for lack of jurisdiction pursuant to rule 25.2(b)(3).

In *Bayless v. State*, the Texas Court of Criminal Appeals noted the effect on an appeal if an appellant did not comply with former rule 25.2(b)(3). 91 S.W.3d 801, 803 n. 2 (Tex.Crim.App.2002). In *Bayless*, the court concluded that "defects in the notice

---

1. Rule 25.2(b)(3) was amended in 2003. *See* Tex.R.App. P. 25 cmt.

[of appeal] that do not affect whether the instrument filed with the clerk is actually a notice of appeal do not prevent the appellate court from having jurisdiction over the appeal." *Id.* "Instead, [such defects] might affect the matters that are cognizable by the appellate court." *Id.* Accordingly, the issue in this case is not whether our jurisdiction was invoked; it is whether this court "has the power to address the merits of appellant's claims." *Id.* Whether we have the "power to address the merits of [Zapata's] claims" is determined by whether Zapata's appeal is governed by former rule 25.2(b)(3), which applies to an appeal from a judgment rendered on a defendant's plea of guilty where the punishment assessed does not exceed the punishment recommended by the State and agreed to by the defendant.

Zapata relies to a large extent on dicta in this court's opinion in *Moreno v. State,* 90 S.W.3d 887, 888–89 (Tex.App.-San Antonio 2002, no pet.). The court in *Moreno,* however, expressly declined to reach the issue presented in this appeal, stating, "Because the parties did not brief this possible basis for jurisdiction, we do not decide whether jurisdiction is proper under this reasoning." 90 S.W.3d at 889.[2] The only other case cited by Zapata is *Ortiz v. State,* 933 S.W.2d 102 (Tex.Crim. App.1996). While this court noted the potential "jurisdictional" question that was raised based on the language quoted from *Ortiz,* this court never fully explored the issue in *Moreno.*

■ *Ortiz* does not address the issue being raised in this appeal. The issue in this appeal is whether former rule 25.2(b)(3) is applicable to an appeal where the defendant moves to withdraw his plea after the trial court inquires into the exis-

tence of a plea bargain agreement, hears a defendant's plea, finds the evidence to be sufficient to show the commission of the offense, but defers a finding of guilt pending a pre-sentence investigation. Zapata contends that former rule 25.2(b)(3) is not applicable because by withdrawing his plea, he withdrew his agreement to the punishment recommendation. As a result, Zapata contends that the punishment assessed was not "agreed to by the defendant." We disagree.

Article 26.13 governs the procedure to be followed by the trial court in plea proceedings. First, the trial court must "inquire as to the existence of any plea bargaining agreements between the State and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject [the plea] agreement in open court and before any finding on the plea." TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp.2003). Article 26.13 only expressly permits the defendant to withdraw his plea of guilty or nolo contendere if the court rejects the agreement. *Id.* Article 26.13 does not expressly permit the defendant to withdraw his plea after a plea is entered but pending the trial court's decision regarding whether to accept the agreement.

In *Ortiz,* the Texas Court of Criminal Appeals was deciding when jeopardy attaches in a case involving a negotiated guilty plea. 933 S.W.2d at 105. "Given the purposes and policies of the prohibition against double jeopardy," the court held that jeopardy attaches "when the trial court accepts the plea bargain." *Id.* at 107. The court reasoned that a defendant is not "put to a trial before the trier of fact" until that point. *Id.* at 106. In

2. We note that *Moreno* issued before the Texas Court of Criminal Appeals clarified in *Bayless* that the issue was not a jurisdictional issue but an issue relating to whether the appellate court had the power to decide the merits of the appeal.

reaching this conclusion, the court made statements regarding the binding effect of a plea bargain agreement and a defendant's ability to withdraw his plea. The court stated, "the trial judge never accepted the plea agreement"; therefore, "the contract of the plea agreement was never binding on the parties." *Id.* at 104. The court further stated, "in a negotiated plea proceeding, even after a defendant pleads guilty, the issue is not joined [for the factfinder] because neither the State nor Appellant are bound by his plea until the trial court accepts the plea agreement. And, if the court does not accept the agreement, a defendant may withdraw his plea." *Id.* at 106.

The statements made in *Ortiz* are similar to statements made in other cases in which the courts are analyzing the "binding" effect of a plea agreement. *See, e.g., Ex parte Williams,* 637 S.W.2d 943, 947 (Tex.Crim.App.1982) (stating "contract" does not become operative until the court announces it will be bound by the plea bargain agreement in discussing whether a plea bargain agreement was illegal); *Bryant v. State,* 974 S.W.2d 395, 398 (Tex. App.-San Antonio 1998, pet. ref'd) (relying on language regarding when plea agreement is operative in *Williams* and holding that State was permitted to "renege" on its agreement before the trial court accepted the agreement but noting that the defendant had been given a chance to withdraw his plea after the State "reneged"); *Tate v. State,* 834 S.W.2d 566, 572 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (noting language in *Williams* in deciding that record did not demonstrate existence of plea agreement absent punishment recommendation). In *Williams,* the Texas Court of Criminal Appeals cited a United States Supreme Court opinion and an earlier opinion of the court to support the contention that, "Once the court makes such an announcement [that it will be bound by the

plea bargain agreement], the State is bound to carry out its side of the bargain." 637 S.W.2d at 947 (citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) and *De Russe v. State,* 579 S.W.2d 224 (Tex.Crim.App.1979)). However, in *De Russe,* the court actually stated that, "Where a defendant enters a plea of guilty or nolo contendere pursuant to a plea bargain agreement, the State is bound to carry out its side of the bargain." 579 S.W.2d at 236. The court refused to enforce the plea bargain agreement in that case because the agreement was withdrawn prior to the entry of appellant's plea. *Id.* Accordingly, *De Russe* supports the contention that the agreement is binding as between the State and the defendant when the defendant enters his plea.

In *Santobello v. New York,* the petitioner agreed to plead guilty to a lesser-included offense in exchange for the prosecutor's agreement to make no recommendation as to the sentence. 404 U.S. at 259, 92 S.Ct. 495. "The court accepted the plea and set a date for sentencing." *Id.* "A series of delays followed, owing primarily to the absence of a pre-sentence report, so that by September 23, 1969, petitioner still had not been sentenced." *Id.* By that date, petitioner obtained new defense counsel, and the new defense counsel immediately moved to withdraw the guilty plea. *Id.* On November 26, 1969, the court denied the motion and set January 9, 1970, as the date for sentencing. *Id.* at 260, 92 S.Ct. 495. By this time, the prosecutor involved in the plea negotiations had been replaced by a new prosecutor, who made a recommendation as to sentencing. *Id.* Defense counsel objected on the basis of the plea agreement. *Id.* The sentencing judge stated that he was not influenced by the prosecutor's statement so adjournment was not necessary and proceeded to impose the

maximum sentence of one year. *Id.* at 260–61, 92 S.Ct. 495.

The Court initially noted the numerous benefits and advantages of the plea bargaining process. *Id.* at 260–61, 92 S.Ct. 495. "However, [the Court noted that] all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor." *Id.* at 261, 92 S.Ct. 495. Although noting that a court has the discretion to reject a plea agreement, the Court emphasized:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by the safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Id.* at 262, 92 S.Ct. 495. The Court then concluded:

> [W]e conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner; *i.e.*, the opportunity to withdraw his plea of guilty.

*Id.* at 262–63, 92 S.Ct. 495. Thus, in *Santobello*, the United States Supreme Court held that a plea agreement is enforceable against the State after the defendant enters his plea based on that agreement. If the State violates the agreement during the sentencing proceeding, the defendant is at least entitled to specific performance of the agreement as against the State. This does not preclude the trial court from rejecting the plea agreement; it simply precludes the State from violating the plea agreement.

In *Blanco v. State*, 18 S.W.3d 218, 219 (Tex.Crim.App.2000), the Texas Court of Criminal Appeals noted the rule in *Santobello* that permits a defendant to insist on the benefit of the bargain. The court then reasoned, "Where, as in this case, there has been no unfairness 'in securing agreement between an accused and a prosecutor,' there is no reason why this rule should not apply to defendants." *Id.* (quoting *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)).

The language used by the courts regarding when a plea agreement becomes binding can be read consistently with *Santobello* if a plea bargain agreement is envisioned as a two step process. The first step in the process is the agreement between the prosecutor and the defendant with regard to the guilty plea and the avoidance of trial. Once made, that agreement becomes binding when the defendant enters his plea. At that point, both the State and the defendant are bound by the terms of the plea bargain agreement and are not permitted to take actions inconsistent with the agreement. Therefore, the State must abide by its agreement regarding the recommendations it will make, and the defendant must abide by his agreement to plead guilty. *See Blanco*, 18 S.W.3d at 219 (rule applies both ways).

The second step in the process involves the trial court's acceptance or rejection of the recommended punishment. Once the plea agreement is made, the recommended punishment becomes binding only if the court accepts the recommendation. If the court rejects the recommendation, the agreed punishment is not binding, and the defendant may withdraw his plea. TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp.2003).

▐ Using purely contractual terms, the trial court's rejection of the plea agreement could be likened to a condition subsequent to the plea agreement between the State and the defendant. A condition subsequent is a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition. *Rincones v. Windberg*, 705 S.W.2d 846, 848 (Tex.App.-Austin 1986, no pet.). The trial court's rejection of the plea agreement would be a condition subsequent or an event that would make the plea agreement no longer binding upon the defendant.

From a policy perspective, permitting the trial court to obtain a pre-sentence investigation report prior to deciding whether to follow the punishment recommendation without the risk of the defendant or the prosecutor jeopardizing the plea agreement would appear preferable. As one commentator has noted:

As a matter of policy, it probably is preferable for the judge always to reserve accepting a plea agreement until after the presentence report has been examined. The judge's duty to scrutinize the agreement from the public's and the defendant's viewpoints can best be executed after the judge has obtained the additional information about the offense and defendant contained in the presentence report. If the *Ortiz* plurali-

ty is followed in subsequent cases, it would permit acceptance of the agreement to be postponed until after the presentence report has been received. So long as the trial court scrupulously permits the defendant to withdraw the plea if the court later rejects or substantially modifies the agreement, the defendant's interests are protected.

43 GEORGE E. DIX AND ROBERT O. DAWSON, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 34.105 (2nd ed.2001).

Based on the United States Supreme Court's holding in *Santobello*, we hold that rule 25.2(b)(3) applies when a defendant enters a plea of guilty or nolo contendere based on a plea bargain agreement and the punishment imposed by the court does not exceed the punishment recommended in accordance with the plea bargain agreement. A motion to withdraw filed after the plea has been entered does not affect the defendant's agreement regarding the recommended punishment or the applicability of the rule.

Given the limitations imposed by rule 25.2(b)(3), this court does not have "the power to address the merits of appellant's claims." 91 S.W.3d at 803 n. 2. Accordingly, the trial court's judgment is affirmed.