**Tommy PANDO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08-02-00530-CR.

Court of Appeals of Texas, El Paso.

April 15, 2004.

Joseph Dean Vasquez, El Paso, for appellant.

Jaime E. Esparza, District Attorney, El Paso, for State.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

Tommy Pando pleaded guilty to possession of child pornography and was sentenced by the court to five years' imprisonment in accordance with a plea agreement. On appeal, he argues that the trial court erred by refusing to suppress certain evidence. We affirm.

### FACTUAL BACKGROUND

Abigail Olmos was married to Pando. On August 16, 2001, Pando was arrested for assaulting her daughter. Olmos immediately obtained a protective order, prohibiting Pando from returning to the marital home. After the protective order was issued, Pando's friends called Olmos and told her that Pando wanted some things from the house, including some tapes.

On September 14, 2001, Olmos was cleaning out the attic over the garage, when she found a box containing videotapes. Olmos started watching the tapes because she wanted to separate Pando's tapes from her own. She discovered that some of the tapes contained nude images of her daughter. It appeared that Pando had surreptitiously videotaped her as she was dressing or stepping out of the shower. Olmos believed that some of the por-nographic tapes were labeled in Pando's handwriting. The box also contained other pornography, guns, drug paraphernalia, and marijuana. According to Olmos, Pando had exclusive control of the attic when he lived at the house, but he had not returned to the house since the protective order was issued.

Olmos called the police to report what she had found. When the police arrived at the house, Olmos gave them permission to search all of the house and gave them the contraband she had already found. The police found additional tapes in an entertainment center and a closet. The police subsequently arrested Pando for possession of marijuana. While under arrest, he gave a statement in which he admitted making the videotapes.

### LIMITATIONS ON APPEALS FROM PLEA-BARGAINED CONVICTIONS

#### Failure to Comply with Extra-Notice Requirement

■ Under the version of the Texas Rules of Appellate Procedure applicable to this case, an appellant who was sentenced in accordance with a plea agreement must include an "extra-notice recitation" in the notice of appeal. *See Woods v. State,* 108 S.W.3d 314, 315–16 (Tex.Crim.App.2003); *see also* TEX.R.APP. P. 25.2(b)(3) (2002 version).[1] The notice of appeal must specify that: (1) the appeal is for a jurisdictional defect; (2) the substance of the appeal was raised by written motion and ruled on before trial; or (3) the trial court granted permission to appeal. *See Woods,* 108

---

1. The Texas Rules of Appellate Procedure have been amended, effective January 1, 2003, to replace the extra-notice requirement with a requirement that the trial court certify whether the appellant has the right to appeal.

*See* Final Approval of Amendments to the Texas Rules of Appellate Procedure, 66 TEX B.J. 166 (2003). Pando filed his notice of appeal in 2002.

S.W.3d at 315–16. If the notice of appeal does not contain an extra-notice recitation, the appellant may cure this omission by filing an amended notice of appeal in this Court at any time before filing his brief. Tᴇx.R.Aᴘᴘ. P. 25.2(f) [2]; *Bayless v. State*, 91 S.W.3d 801, 805–06 (Tex.Crim.App.2002). After the appellant files his brief, he may file an amended notice of appeal "only on leave of the appellate court and on such terms as the court may prescribe." Tᴇx. R.Aᴘᴘ. P. 25.2(f). If the appellant fails to file either an original or an amended notice of appeal containing the extra-notice recitation, we do not have the power to address the merits of the appellant's claims. *See Bayless*, 91 S.W.3d at 803 n. 2; *White v. State*, 61 S.W.3d 424, 428–29 (Tex.Crim. App.2001).

■ In this case, Pando's notice of appeal does not contain an extra-notice recitation. Pando did not file an amended notice of appeal before filing his brief, nor has he requested leave of this Court to file an amended notice.[3] Accordingly, we lack the power to consider Pando's arguments on appeal.

### *Lack of Written Motion*

■ In any event, it does not appear that the filing of an amended notice of appeal containing an extra-notice recitation would allow us to consider Pando's appellate arguments. An extra-notice recitation must be true and supported by the record. *Woods*, 108 S.W.3d at 316. Moreover, we are not authorized to address issues that do not fall within one of the three categories listed in former rule 25.2(b)(3). *Id.*

In his sole issue on appeal, Pando argues that the trial court should have suppressed evidence collected at the house. This is not a jurisdictional issue, and the record does not reflect that the trial court granted permission to appeal this issue. *See* Tᴇx.R.Aᴘᴘ. P. 25.2(b)(3)(A), (C) (2002 version). The record does reflect that the trial court conducted a suppression hearing and signed an order refusing to suppress the evidence before the plea proceedings. However, the record does not contain a written motion to suppress the evidence. We have inquired with the district clerk, and there is no such motion on file in this case.

The rule allows a plea-bargaining defendant to appeal when "the substance of the appeal was raised by *written motion* and ruled on before trial." Tᴇx.R.Aᴘᴘ. P. 25.2(b)(3)(B) (2002 version) (emphasis added). In *Woods*, the appellant's amended notice of appeal stated that he was appealing a written pretrial order finding that he was competent to stand trial. 108 S.W.3d at 315. The Court of Criminal Appeals held that this extra-notice recitation did not state a ground that was cognizable under rule 25.2(b)(3). *Id.* at 316. The court stated:

> As for the appeal of the trial court's written order finding appellant competent, the notice does *not* allege that appellant's incompetency was a matter raised by written *motion* and ruled upon before trial. And the record would not substantiate such a recitation: appellant filed written motions for psychiatric examinations and those motions were granted. Whether appellant was actual-

---

2. This provision was formerly found in subsection (d). *See* Tᴇx.R.Aᴘᴘ. P. 25.2 (2002 version).

3. In its brief filed on December 10, 2003, the State pointed out that Pando's notice of appeal does not comply with rule 25.2(b)(3).

ly competent to stand trial was ruled upon by written order but was never advanced in a written motion.

*Id.* at 316 n. 6.

In this case, the trial court made a written pretrial ruling, but Pando did not make a written pretrial motion. Therefore, even if Pando amended his notice of appeal, it could not accurately state that the substance of the appeal was raised by written motion and ruled on before trial. Because an appeal of a written pretrial order is not cognizable under rule 25.2(b)(3) absent a written pretrial motion, we do not have the power to address the merits of Pando's appellate arguments.[4]

## PRESERVATION OF ERROR

■ There is another reason why we cannot address the merits of Pando's appellate arguments: he did not make the arguments in the trial court.

To preserve an error for appellate review, the complaining party must raise the issue in the trial court by a timely and specific request, objection, or motion. TEX. R.APP. P. 33.1(a)(1). A motion to suppress based on one legal theory cannot be used to support a different legal theory on appeal. *See Urquhart v. State,* 128 S.W.3d 701, 704 (Tex.App.-El Paso 2003, no pet. h.); *Leno v. State,* 934 S.W.2d 421, 423 (Tex.App.-Waco 1996), *pet. dism'd, improvidently granted,* 952 S.W.2d 860 (Tex. Crim.App.1997).

In his sole issue on appeal, Pando asserts that he had a reasonable expectation of privacy in the garage attic because he took steps to keep others out of the area. He therefore argues that Olmos's search was illegal and that she did not have the authority to consent to the police search. Pando did not make these arguments in the trial court.

As noted above, no written motion to suppress appears in the record. From the transcription of the suppression hearing, it appears that Pando's counsel only moved to suppress Pando's statement. In his

---

4. The State argues that this appeal should be dismissed for lack of jurisdiction because of Pando's failure to comply with rule 25.2(b)(3). In years past, the Court of Criminal Appeals indicated that the failure to comply with rule 25.2(b)(3) and its predecessor deprived the appellate court of jurisdiction. *See, e.g., White,* 61 S.W.3d at 428–29; *Davis v. State,* 870 S.W.2d 43, 46 (Tex.Crim.App.1994). More recently, the court stated, citing *Davis:* "We recognize that in the past we have addressed the issue of whether a notice conferred jurisdiction over a court of appeals when in fact a question of jurisdiction was not at issue." *Bayless,* 91 S.W.3d at 803 n. 2. The court further stated:

> Once a notice of appeal has been timely filed in a case, the Court of Appeals obtains jurisdiction over the case. Thus, defects in the notice that do not affect whether the instrument filed with the clerk is actually a notice of appeal do not prevent the appellate court from having jurisdiction over the

appeal. Instead, they might affect the matters that are cognizable by the appellate court.

*Id.* Finally, the court stated that "the issue is not whether the jurisdiction of the Court of Appeals was invoked; it is whether the Court of Appeals had the power to address the merits of appellant's claims." *Id. Bayless* does not explain the distinction between an issue over which a court has no jurisdiction and an issue that the court does not have the power to address. *See Olivo v. State,* 918 S.W.2d 519, 522 (Tex.Crim.App.1996) ("Jurisdiction concerns the power of a court to hear and determine a case."). Nevertheless, the case makes clear that compliance with rule 25.2(b)(3) is not a jurisdictional issue. *See Zapata v. State,* 121 S.W.3d 66, 66–67, 70 (Tex.App.-San Antonio 2003, pet. ref'd); *see also Woods,* 108 S.W.3d at 316 (stating that an appellate court "is not authorized to address" issues that do not fall within one of the categories listed in former rule 25.2(b)(3)).

examination of witnesses at the hearing, Pando's counsel focused on the voluntariness of the statement. Contrary to his stance on appeal, counsel also attempted to establish that Pando did not have exclusive control of the garage attic, apparently trying to create doubt as to whether the contraband found there actually belonged to Pando.

In his closing argument, Pando's counsel argued that the arrest warrant was not supported by probable cause because there was no evidence that the marijuana was Pando's and that the statement was not voluntary. When counsel finished his closing argument, the trial judge asked, "And you don't want me to consider ... anything about the videotapes or anything?" Counsel indicated that he intended to file a motion to suppress the evidence collected at the house, but he was not yet prepared to address issues related to that evidence because he had only been on the case for a short time. Counsel stated that he was "not waiving any rights," but his understanding was that the admissibility of the statement was the only issue currently before the court. The judge indicated that although he would be willing to consider the admissibility of the videotapes at a later date, he did not believe another hearing would be necessary. Pando's counsel agreed.

The prosecutor then began his closing argument by requesting the court to rule immediately on the admissibility of all the evidence. The judge and the prosecutor agreed that "the issue" was whether Olmos had standing and authority to consent to the seizure of the evidence. Neither the judge nor the prosecutor elaborated on any specific arguments as to why Olmos did or did not have standing and authority to consent. The prosecutor simply asserted that Olmos did have such standing and authority because the evidence was found in the marital home. Then he quickly moved on to address the voluntariness of the statement. Pando's counsel did not participate in the discussion.

When the prosecutor finished his closing argument, the judge stated that he would make a ruling the following day. Then the following colloquy occurred between the judge and Pando's counsel:

Judge: [I]f you have anything other on the seizure of the evidence—I believe the evidence is before me, unless something comes up. You need to also maybe give me a case or something to address that issue if you feel that—

Counsel: I'll do that in a memorandum form, Judge. I apologize.

Judge: I don't need a memorandum, just case law. I don't need you to tell me what the cases are about. I can read the cases and make that determination.

If you feel you have a case on point that says that the wife did not have standing to consent to the seizure of these items or to the relinquishing of these items, then give me a case that would support your contention. All right?

Counsel: I will, Your Honor.

The record does not demonstrate that counsel subsequently supplied the judge with a case or any argument regarding the admissibility of the evidence collected at the house. The judge eventually signed an order denying "Defendant's Motion to Suppress Defendant's Statement" and another order denying "Defendant's Motion to Suppress Physical Evidence."

From this review of the record, it is apparent that Pando did not move to suppress the evidence collected at the house; he only moved to suppress his statement. Although the record indicates that Pando's counsel planned to seek suppression of the other evidence, the record does not indicate that he followed through on that plan. It is true that the judge and the prosecutor briefly discussed whether Olmos had standing and authority to consent to seizure of the evidence. But they did not discuss the specific argument raised by Pando on appeal, and Pando's counsel did not discuss the issue at all. Accordingly, we conclude that Pando failed to preserve any error in the trial court's refusal to suppress the evidence.

### CONCLUSION

For the reasons stated herein, we overrule Pando's issue on appeal and affirm the judgment of the trial court.