

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00008-CR

_____

IN RE ROY DEAN DUFFEY

Original Mandamus Proceeding

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

## O P I N I O N

Roy Dean Duffey asks this Court to issue a writ of mandamus directing the judge of the 8th Judicial District Court of Hopkins County to enforce a plea agreement. We deny Duffey's petition because he has failed to establish that he is entitled to the relief requested.

## I.      Background

This case was previously before us on direct appeal of Duffey's conviction. *Duffey v. State*, 428 S.W.3d 319 (Tex. App.—Texarkana 2014, no pet.). Although our previous opinion states the pertinent facts in this case, we will restate some of them here in order to provide context to our ruling.

Duffey was indicted for the murder of David Harrison Cooper in the 8th Judicial District Court of Hopkins County, Texas. On the day of trial, "Duffey and the State entered into a plea agreement wherein Duffey entered a plea of guilty to the reduced charge of manslaughter with an agreed punishment recommendation of ten years' imprisonment on the condition that Duffey would receive 'shock probation.'" *Id*. at 320. The trial court accepted his plea, but reset the sentencing hearing for July 9, 2012. *Id.* As we noted in our previous opinion, "During the plea hearing, the trial court accepted Duffey's plea of guilty, making it plain that Duffey would thereafter be unable to withdraw that plea of guilty." *Id*. at 321. The trial judge then stated,

> "You've entered a plea of guilty, and your attorneys—I mean, they've got you a great deal here, probably. If you committed manslaughter, you've got a very good opportunity. The question is—you've told me you had, so the Court will find you guilty next Monday and sentence you and then plan to bring you back before Christmas [pursuant to shock probation]. That's—that's the plan."

*Id*. at 321–22.

2

After the plea hearing, but before the formal sentencing hearing, the victim's parents, the parents' minister, and other friends of the family traveled to the judge's chambers at the courthouse, unannounced and uninvited, to register their complaints about the State's plea agreement with Duffey. Although the district judge repeatedly told them he could not discuss the case, he listened to their complaints. *Id*. at 322–23. To end this meeting, the minister "led everyone, including the trial judge, in a prayer for justice, and . . . the trial judge concluded the meeting by rising, informing the group that he had to be somewhere else quite shortly, and leaving the room." *Id*. at 323. That same day, the State "filed a motion to continue the sentencing hearing on the basis that representatives of the State had met with Cooper's family and had received 'the possibility of evidence that could affect its decision or the Court's decision to accept or reject the agreement offered to the Court.'" *Id*. at 320–21. The motion for continuance was heard on July 9, 2012, the date originally scheduled for the sentencing hearing. The State's motion was granted, and the matter was reset for July 23, 2012.

On July 19, the trial judge informed the parties of his intent to reject the plea agreement. *Id.* at 321. Duffey moved to recuse the trial judge, and the Administrative Judge for the First Administrative Judicial Region denied the motion. *Id.* Thereupon, Duffey entered an open plea of guilty to the charge of manslaughter, and the jury sentenced him to twelve years' imprisonment. *Id.* On appeal, this Court reversed the conviction and granted a new trial because the administrative judge erred in failing to grant Duffey's motion to recuse. *Id.* at 327.

Upon remand to the trial court, Duffey filed a motion to enforce the original plea agreement. The current district judge for the 8th Judicial District Court heard the motion on

3

October 22, 2014.  The current Hopkins County district attorney and defense counsel appeared at the hearing on Duffey's motion.[1]  The trial judge heard the matter, considered the applicable authorities, arguments of counsel, and the record, and took the matter under advisement.  After careful consideration, the trial judge denied Duffey's motion to enforce the original plea agreement.

Duffey has now filed this action asking us to issue a writ of mandamus directing the trial judge to enforce the plea agreement reached in July 2012.

## II.    Standard of Review

To obtain mandamus relief in a criminal case, "the relator must show two things:  (1) that he has no adequate remedy at law[] and (2) that what he seeks to compel is a ministerial act." *In re Bonilla*, 424 S.W.3d 528, 533 (Tex. Crim. App. 2014) (orig. proceeding).  Ordinarily, the enforceability of a plea agreement is an issue that may be raised through direct appeal.  *See Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996) (finding trial court's acceptance of guilty plea before approval of plea agreement to be tentative and nonbinding); *see Wright v. State*, 158 S.W.3d 590, 594–95 (Tex. App.—San Antonio 2005, pet. ref'd) (reversing on direct appeal trial court's sua sponte rejection of plea agreement where prior to ex parte meeting with victim's family, trial court accepted plea and agreed to "go along" with plea agreement).

Moreover, an act is "ministerial" if it does not involve the exercise of any discretion. *State ex rel Hill v. Court of Appeals for the Fifth Dist.*, 67 S.W.3d 177, 180–81 (Tex. Crim. App.

---

[1]Between the time of the first plea hearing and our opinion remanding the case to the 8th Judicial District Court, a new judge was elected to the 8th Judicial District Court and a new district attorney was elected in Hopkins County.

4

2001). The issue must be beyond dispute with "'nothing left to the exercise of discretion or judgment.'" *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 198 (Tex. Crim. App. 2003) (quoting *Hill v. Fifth Court of Appeals*, 34 S.W.3d 924, 927–28 (Tex. Crim. App. 2001)). If there is any discretion or judicial determination attendant to the act, it is not ministerial; nor is it ministerial if the trial court must weigh conflicting claims or collateral matters that require legal resolution. *State ex rel Hill*, 67 S.W.3d at 181.

A trial court enjoys broad discretion to accept or reject a sentencing recommendation offered by the State. *Smith v. State*, 243 S.W.3d 722, 726 (Tex. App.—Texarkana 2007, pet. ref'd). Consequently, mandamus is typically not available to force a trial court to enforce a plea agreement. Nevertheless, in *Perkins v. Court of Appeals for Third Supreme Judicial District of Texas, at Austin*, 738 S.W.2d 276, 285 (Tex. Crim. App. 1987) (orig. proceeding), the Court of Criminal Appeals held that mandamus relief is available to enforce a plea agreement where the plea agreement has become so final that the trial judge's refusal to enforce the agreement is tantamount to granting a new trial sua sponte. Accordingly, we must decide whether the plea agreement in this case rose to that level of finality.

### A.    *Perkins*

In *Perkins*, the petitioner and two other individuals were charged with murder. The State, believing the petitioner was merely a party and not a principal to the murder, entered into a plea agreement with a sentencing recommendation of "25 years in the Texas Department of Corrections." *Id*. at 278. At the initial plea hearing,

5

[the Petitioner's] attorney then advised Relator [the trial judge], "Your Honor, on top of that, we're going to ask for a PSI [presentence investigation report] and ask the Court to consider all the facts, but that [the 25 years] is the [prosecutor's] recommendation." Relator then told [Petitioner] that it was his "intention to accept the State's recommendation at this time," and that "if the Court proceeds to sentencing, then [you] can be given 25 years in the penitentiary and would not be allowed to appeal or anything else."

*Id.*

The trial court went forward with the change of plea hearing. The plea admonishments were completed, signed, and filed with the clerk, and the State's evidence was admitted into evidence. *Id.* at 279. The trial court "then found [the Petitioner] guilty as a party to the offense of murder, 'and not that you yourself actually committed the murder.'" *Id.* The trial judge went on to state his understanding of the parties' agreement:

"(Referring to [the Petitioner's] attorney): You—basically, you're stating that you—all are accepting the 25 as being the maximum ceiling and that's what you-all are agreeing to and you understand that I could go lower than that but you—all's agreement is that I would go no higher than 25."

*Id.* Finally,

[t]he record clearly reflects that Relator made it clear to everyone that "the maximum punishment that [he] would be giving [Petitioner] . . . would be 25 years pursuant to the State's plea negotiation." However, Relator also made it known to everyone that "it [was] possible that [he] would go lower than–that, [that he might] give [Petitioner] something less than 25 years in view of [his, Petitioner's] testimony, in view of the letter that you've submitted the Court and all of the evidence in this case. It's a possibility that [I] would do less than 25 [but I am] not [now] really sure how much that would be."

*Id.*

Between the initial plea hearing on September 16 and the sentencing hearing two weeks later, the State learned that the petitioner was a principal to the murder, not just a party. *Id.* at

6

280. The State apparently relayed the new information to the trial judge in an ex parte conversation. *Id*. at 279–80. At the sentencing hearing, the trial judge announced that the State was withdrawing its "plea bargain offer in this case" and that it would "not accept the 25 years that [he had] previously assessed in this case." *Id*. at 280. The petitioner filed his application for a writ of mandamus in the court of appeals, which granted the application. *Id*. The Texas Court of Criminal Appeals affirmed the court of appeals stating,

> Under this Court's decision of *Zaragosa v. State*, 588 S.W.2d 322 (Tex. Crim. App. 1979), Relator had no lawful authority to *sua sponte* withdraw [Petitioner's] plea of guilty. In *Zaragosa*, supra, this Court held that because a motion for new trial in a criminal case may be granted only on the timely motion of a defendant, a trial judge has no power to grant a new trial on his own motion, and, if he does grant a motion for new trial on his own motion, such is a void act. We find that Relator's act, after approving the plea bargain agreement that the parties had entered into, to the extent of the "cap" that had been set on punishment that would be assessed by Relator, in refusing to go forward with the plea bargain agreement and withdrawing [Petitioner's] plea of guilty, actually amounted to the granting on his own motion a new trial for [Petitioner]. Such act was, for the reasons stated in *Zaragosa*, supra, a nullity. [Petitioner] stands convicted of the offense of murder on his plea of guilty.

*Id*. at 280–81.

The facts in *Perkins* and the present case are remarkably similar. In both cases, the defendants were charged with murder. In both cases, the State entered into a plea agreement with the defendants with a sentencing recommendation that would place a cap on the upper end of the sentence with the possibility of a lesser sentence depending upon the results of subsequent events. In both cases, the plea admonishment forms were completed, signed, and filed with the clerk, the defendants were admonished of the risks associated with waiving their rights, waived their rights, and pled guilty. In both cases, the trial judge accepted the defendants' guilty pleas.

7

In both cases, formal sentencing was reset for a later date, and in both cases, the trial judge held an ex parte conversation—with the State in *Perkins* and the victim's family here—between the date the plea was accepted and the date of sentencing. In both cases, the trial judges refused to go forward with the plea agreement and sentencing recommendation based upon information derived from the ex parte communication.

Nevertheless, two key differences exist between the facts in this case and in *Perkins.* First, in *Perkins*, the trial judge "found [the Petitioner] guilty," *Perkins*, 738 S.W.2d at 279, and here, the trial judge said he would find Duffey "guilty next Monday." *Duffey*, 428 S.W.3d at 321. Second, in *Perkins*, the trial judge "made it clear to everyone that 'the maximum punishment that [he] would be giving [Petitioner] . . . would be 25 years pursuant to the State's plea negotiation.'" *Perkins*, 738 S.W.2d at 279. Here, the trial judge said he planned to bring Duffey back before Christmas for shock probation. *Duffey*, 428 S.W.3d at 321. Accordingly, the State in *Perkins* recommended a range of possible prison sentences; here, the State recommended shock probation. The question presented is whether these differences are sufficient to distinguish the trial judge's decision to reject the plea agreement in this case from the trial judge's void order sua sponte granting a new trial in *Perkins*. For the reasons set forth below, we find that they are.

### B. Caselaw Regarding Enforceability of Plea Agreements

"A plea agreement is a contractual arrangement. Until all of the necessary parties agree to the terms of the contract, the agreement is not binding." *Ortiz*, 933 S.W.2d at 104. Moreover,

> [a] plea bargain consists of three parts: a plea of guilty, the consideration for it, and the approval by the court of the agreement. The bargain is the consideration exchanged to the defendant for the plea of guilty. In order for the contract to be binding, the trial judge must approve and accept both aspects of it. When presented with a plea bargain, the court has the right to accept or reject it; however, it may not hold the defendant to his plea of guilty while rejecting the benefit the defendant was to receive. If the court does not approve the entire agreement, the defendant must be allowed to withdraw his plea of guilty.

*Ortiz v. State*, 885 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1994), *aff'd*, 933 S.W.2d 102 (Tex. Crim. App. 1996).

Finalizing a plea agreement involves two steps. *Zapata v. State*, 121 S.W.3d 66, 69 (Tex. App.—San Antonio 2003, pet. ref'd). First, the defendant and the State reach an agreement; when the defendant enters his plea to the trial court, the agreement is binding on both parties only. *Id*. Second, the trial court must accept or reject the recommended punishment; if the court accepts the recommended punishment, the plea agreement becomes binding upon both parties and the court. *Id*. at 70. Conversely, if the trial court rejects the punishment recommendation, the defendant may withdraw his guilty plea, and neither party is bound by the plea agreement. *Id*. Essentially,

> [u]sing purely contractual terms, the trial court's rejection of the plea agreement could be likened to a condition subsequent to the plea agreement between the State and the defendant. A condition subsequent is a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition. *Rincones v. Windberg*, 705 S.W.2d 846, 848 (Tex. App.—Austin 1986, no pet.). The trial court's rejection of the plea agreement would be a condition subsequent or an event that would make the plea agreement no longer binding upon the defendant.

*Id.*

9

Furthermore, there are two types of "acceptance" by the trial court: (1) acceptance of the guilty plea when the trial court finds that the defendant was competent and that he entered his plea freely and voluntarily and (2) acceptance of the recommended sentence and terms of the agreement when the trial court finds the defendant guilty, or defers adjudication, and imposes the agreed upon sentence. Judge Meyers, in his concurring opinion in *Ortiz*, made this distinction clear:

> In my opinion, appellant's argument is based upon several mistaken assumptions. First, he evidently believes that acceptance of his guilty plea by the trial judge was tantamount to acceptance of his plea bargain with the prosecutor. But this is surely wrong. Our law provides that "[p]rior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of [some important consequences which may follow from his plea] and that "[n]o plea of guilty or nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." [TEX. CODE CRIM. PROC. ANN. art. 26.13(a), (b)]. Thus, acceptance by the court of a defendant's guilty plea is legally inhibited only if the plea is not an intelligent act of the defendant's competent free will. The trial judge need not also agree to ratify the terms of a private agreement between the parties before accepting a guilty plea. At most, he need only state whether he will ratify or reject the bargain.

*Ortiz*, 933 S.W.2d at 110 (Meyers, J., concurring). Accordingly, between the time when a trial court accepts the plea of guilty by finding the defendant competent and finding that his plea was free and voluntary—which makes the agreement binding upon the State and the defendant—and the time when the court finds the defendant guilty, or defers adjudication of guilt, and imposes the agreed upon sentence—which makes the agreement binding upon the court—the trial court has broad discretion to accept or reject the State's sentencing recommendation. *Id.*; *see also Smith*, 243 S.W.3d at 726.

10

Therefore, the distinctions between the plea agreement status in this case and the one in *Perkins* are significant. In *Perkins*, the trial judge had accepted the defendant's plea, had found the defendant guilty, and had agreed to impose not more than the agreed upon sentence, while reserving the possibility of imposing a lesser sentence, before he attempted to reject the plea agreement. By that point, the plea agreement had already become binding upon the trial court, and the trial court had no discretion to do anything other than sentence the defendant in accordance with the agreement. Here, on the other hand, the trial judge had only accepted the defendant's plea of guilty, but had postponed a finding of guilt and imposition of the agreed upon sentence until the sentencing hearing. Unlike the judge in *Perkins*, who only had to determine whether to impose the maximum term of twenty-five years' imprisonment or some lesser term of imprisonment, in this case, the judge still had to decide whether to impose shock probation.

Article 42.12, Section 6(a) of the Texas Code of Criminal Procedure provides, "Before the expiration of 180 days from the date of execution of the sentence actually begins, the judge of the court that imposed such sentence may . . . suspend further execution of the sentence and place the defendant on community supervision." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 6(a) (West Supp. 2014). Section 6(c) provides, "The judge may deny the motion without a hearing, but may not grant the motion without holding a hearing and providing the attorney representing the state and the defendant the opportunity to present evidence on the motion." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 6(c) (West Supp. 2014). Moreover, Section 9 provides that before a trial judge can impose a sentence of community supervision in a felony case, "the judge

11

shall direct a supervision officer" to prepare a presentence investigation (PSI) report. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(a) (West Supp. 2014).

Although at first glance, a sentence of ten years with a possibility of shock probation might seem similar to the twenty-five-year sentence with the possibility of a lesser sentence in *Perkins*, the fact is that Duffey did not bargain for a sentencing recommendation for a term of imprisonment of ten years or less, but for a sentencing recommendation of shock probation. The judge could not impose that bargained-for sentence without further hearing and without a PSI report. Thus, the trial judge below had many steps remaining before he could impose the recommended sentence in this case.

Consequently, the judge's decision to reject the sentencing recommendation in this case is not tantamount to a sua sponte grant of a new trial as in *Perkins*, and he had broad discretion to reject the agreement.[2]

---

[2]It should be noted that the exercise of discretion by the first district judge in rejecting the plea agreement prior to the first trial is not at issue in this case. The prior conviction and sentence was reversed by our earlier decision, and the case was remanded to the trial court for a new trial. Consequently, it returned to the position it occupied before the former trial, including, "at any party's option, arraignment or pretrial proceedings initiated by that party." TEX. R. APP. P. 21.9(b). By filing his motion to enforce the plea agreement, Duffey elected to return the case to the position it occupied after he entered his negotiated plea of guilty, but before the first judge rejected the sentencing recommendation. Thus, on remand, the trial court received the case in that posture.

12

**III.   Conclusion**

When a trial judge has discretion to act, mandamus is unavailable.  Because the trial judge below retained discretion to reject the plea agreement, Duffey cannot show that enforcing the agreement was ministerial in nature.  Consequently, Duffey is not entitled to the relief he requests.

We deny the petition.



Ralph K. Burgess
Justice


Date Submitted:      February 26, 2015
Date Decided:        February 27, 2015

Publish