

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00052-CR

_____

ZAFRES LAMONN MCDONALD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 50096-A

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

Zafres Lamonn McDonald entered an open plea of guilty to evading arrest or detention with a motor vehicle and pled true to the State's punishment-enhancement allegations. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A). After making an affirmative deadly weapon finding, the trial court sentenced McDonald to thirty-four years' imprisonment. On appeal, McDonald argues that the trial court erred by failing to enforce an alleged plea agreement and that the deadly weapon finding is not supported by legally sufficient evidence.[1]

We find that (1) the trial court properly concluded that there was no binding plea agreement and (2) legally sufficient evidence supports the deadly weapon finding, but that (3) we must modify the trial court's judgment to reflect the proper degree of offense. As a result, we modify the trial court's judgment to reflect that McDonald was convicted of a third-degree felony and affirm the trial court's judgment, as modified.

*(1)    The Trial Court Properly Concluded that there Was No Binding Plea Agreement*

The record shows that the State initially wished to make a global offer to resolve several charges against McDonald.[2] On March 17, 2021, the State filed its notice of intent to seek an affirmative deadly weapon finding on this charge of evading arrest or detention. In addition to this case, the State alleged that McDonald had committed unauthorized use of a motor vehicle, credit card abuse, and other miscellaneous offenses, including resisting arrest, two counts of

---

[1]In companion causes numbered 06-21-00053-CR, 06-21-00054-CR, and 06-21-00055-CR, McDonald appeals his convictions of unauthorized use of a motor vehicle, credit card abuse, and evading arrest or detention with a motor vehicle, respectively.

[2]The indictment here contained punishment-enhancement allegations that McDonald was previously convicted of felony offenses of unauthorized use of a motor vehicle and aggravated robbery.

failure to identify, possession of less than two ounces of a penalty group 2 substance, tampering with evidence, and silent or abusive calls to a 9-1-1 service. The record also shows that the State was informed of a second charge for evading arrest or detention with a motor vehicle, which had not yet been indicted.[3] McDonald argues that the trial court erred by failing to find the existence of a plea agreement. After a series of hearings, the trial court concluded that no plea agreement had been reached because the State represented that (1) the offer was made with the assumption that McDonald would agree to the deadly weapon finding and (2) the second evading-arrest charge was not included in the offer because the State mistakenly believed it was contained on McDonald's list of charges due to a "clerical error." We examine the history of the case for a better understanding of the parties' arguments and the trial court's ruling.

### a. Procedural History

On March 18, the day after the State filed its notice of intent to seek an affirmative deadly weapon finding in this case, the trial court held a status hearing in which the State represented that it had "made an offer of 15 years" for all pending charges. The State announced that the offer would expire that day if not accepted and that it was going to be seeking a deadly weapon finding. The State explained, "[I]f and when the trial occurs and [McDonald]'s found guilty[,] . . . he would have to serve at least half his time in [the Texas Department of Criminal Justice] before he'd be eligible for parole." McDonald's counsel confirmed that he had conveyed the offer to McDonald, who rejected it because he had "never really been on board with pleading to anything other than 24 months state jail on these charges." Even so,

---

[3]McDonald was convicted of this second evading arrest or detention charge and appeals that conviction in our cause number 06-21-00055-CR.

3

McDonald's counsel clarified that he had not informed McDonald that the State was seeking a deadly weapon finding. The trial court asked if McDonald wanted to take the offer, but he responded, "I have rejected that offer already, sir and I . . . want three trials." The State then announced that it was "officially rescinding its offer."

After further discussions at the same hearing, the State notified McDonald that, because of the habitual-offender allegations, McDonald's minimum punishment was twenty-five years should he choose to go to trial. It then said that it would "keep that offer on the table" until McDonald could have additional discussions with his attorney, without further specifying whether the plea offer would require McDonald to agree to a deadly weapon finding. After a break, McDonald's counsel announced that McDonald had accepted the offer. Yet, when McDonald asked if the State would still seek a deadly weapon finding, the State clarified that "the deadly weapon stays," at which point McDonald said, "I ain't pleading to no deadly weapon," and indicated his preference to go to trial. The State then said, "Your Honor, offer off the table, trial."

At a March 24 status hearing, the State again announced that there was no plea agreement and that its offer had been withdrawn. McDonald's counsel then said,

> One of the things that we wanted to go ahead and make a record on was at the last meeting, the State had made an offer of 15 years. Mr. McDonald accepted it.
>
> It fell apart because Mr. McDonald believed, and so did I, that the 15 years did not include an affirmative finding of deadly weapon. We are still—we accepted that offer. We stand ready to accept that offer right now.

4

And we believe that the State then changed the offer to include a deadly weapon finding, and we want to hold the State to their original offer of 15 years without a finding of deadly weapon.

The State responded by arguing that, although it had not specifically addressed the deadly weapon finding in conveying its offer, it was a required term of the offer's acceptance because the notice of intent to seek a deadly weapon was filed before the first status hearing. The State also argued that, while it originally believed the second evading-arrest charge was a "clerical error," it had since discovered that McDonald had evaded arrest or detention two days after committing the offense in this case. As a result, the State was not prepared to offer a fifteen-year-sentencing recommendation to resolve all of McDonald's pending cases.

On April 15, McDonald filed a motion to enforce a plea agreement. Because the State had represented that it would be seeking an affirmative deadly weapon finding "when the trial occur[red]," McDonald's counsel argued that a plea bargain would remove the need for trial and represented that, as a result, the State's original offer had not required McDonald to accept the deadly weapon finding. After hearing further argument, the trial court found that there was no meeting of the minds related to the plea offer. As a result, the trial court overruled McDonald's motion to enforce a plea agreement.

On April 16, McDonald entered an open plea of guilty to this offense and the offenses at issue in our companion cases after being admonished in writing that he was entering a "non-negotiated plea." McDonald also entered pleas of true to the State's enhancement allegations and pleas in bar to the other miscellaneous offenses. McDonald represented that his pleas were made "without any coercion, duress or promise of benefit other than that stated in the plea

5

bargain agreement." The trial court accepted McDonald's pleas; found him guilty of two counts of evading arrest or detention, one count of unauthorized use of a motor vehicle, and one count of credit card abuse; and set the date for a punishment hearing.

b.      *Analysis*

"A plea agreement is a three-party contractual arrangement among the State, the defendant, and the trial court." *Becerra v. State*, No. 07-17-00169-CR, 2018 WL 5289713, at *2 (Tex. App.—Amarillo Oct. 24, 2018, pet. ref'd) (mem. op., not designated for publication).[4] It "consists of three parts: a plea of guilty, the consideration for it, and the approval by the court of the agreement." *In re Duffey*, 459 S.W.3d 216, 221 (Tex. App.—Texarkana 2015, orig. proceeding) (quoting *Ortiz v. State*, 885 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1994), *aff'd*, 933 S.W.2d 102 (Tex. Crim. App. 1996)). "[T]he bargain is the consideration exchanged to the defendant for the plea of guilty." *Id.* (quoting *Ortiz*, 885 S.W.2d at 273).

"Finalizing a plea agreement involves two steps." *Id.* at 222. "First, the defendant and the State reach an agreement; when the defendant enters his plea to the trial court, the agreement is binding on both parties only." *Id.* "Second, the trial court must accept or reject the recommended punishment; if the court accepts the recommended punishment, the plea agreement becomes binding upon both parties and the court." *Id.* "Conversely, if the trial court

---

[4]"Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

rejects the punishment recommendation, the defendant may withdraw his guilty plea, and neither party is bound by the plea agreement." *Id.*[5]

"[A] defendant has no right to demand that the State enter into a plea bargain." *DeRusse v. State*, 579 S.W.2d 224, 236 (Tex. Crim. App. 1979). "Only the state may offer or withdraw a plea bargain." *Moore v. State*, 295 S.W.3d 329, 332 (Tex. Crim. App. 2009). Because, under the first step, "a plea-bargain agreement is solely between the state and the defendant, only the state and the defendant may alter the terms of the agreement." *Id.*

McDonald's arguments appear to suggest that an agreement was reached between him and the State, but, under the first step, the "agreement becomes binding [only] when the defendant enters his plea." *Zapata v. State*, 121 S.W.3d 66, 69 (Tex. App.—San Antonio 2003, pet. ref'd). Only at that point, "both the State and the defendant are bound by the terms of the plea bargain agreement and are not permitted to take actions inconsistent with the agreement." *Id.*

As a result, it is only "after the judge has accepted a plea bargain in open court" that "a defendant has a right to enforce the state's part of the plea bargain." *Ex parte Cox*, 482 S.W.3d 112, 116–17 (Tex. Crim. App. 2016). In other words, "[t]he State is permitted to withdraw a plea offer even after it has been accepted by a defendant so long as the plea has not yet been entered and the defendant has not otherwise been harmed by reliance on the agreement." *Becerra*, 2018 WL 5289713, at *2 (citing *DeRusse*, 579 S.W.2d at 236); *see Moore*, 295 S.W.3d

---

[5]Under this second step, the agreement is not binding "[u]ntil all of the necessary parties agree to the terms of the contract." *In re Duffey*, 459 S.W.3d at 221 (quoting *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996)). So, "[i]n order for the contract to be binding, the trial judge must approve and accept both aspects of [the plea bargain]." *Id.* at 221–22.

at 332 ("If the trial court accepts a plea-bargain agreement, the state may not withdraw its offer."). This is because when an "agreement [i]s withdrawn prior to the entry of appellant's plea," the appellant is "in the same position he would have been in had no agreement been made[] or had the trial court indicated that it would not follow the agreement." *DeRusse*, 579 S.W.2d at 236.

Here, the record established that McDonald had not entered any plea before seeking to enforce the State's offer. In fact, during several of the hearings discussed above, McDonald repeatedly said that he was not guilty of the offenses and that he felt as if he was being forced to plead guilty out of fear. The record established some confusion as to the terms of the State's offer, but, even had there been a meeting of the minds, the State was permitted to and did withdraw the offer before McDonald's plea. Because there was no binding agreement between McDonald and the State, we find that the trial court properly overruled McDonald's motion to enforce a plea agreement.

We overrule this point of error.

*(2)     Legally Sufficient Evidence Supports the Deadly Weapon Finding*

The evidence at trial showed that McDonald used a motor vehicle as a deadly weapon. Kiefer Bounds, a trooper with the Texas Department of Public Safety, testified about the high-speed chase that resulted in McDonald's charge in this case. Bounds testified that, while driving on the highway, he found a vehicle stopped on the right shoulder and decided to pull over to offer his assistance, if needed. He contacted McDonald, the driver and sole occupant of the vehicle, who said that he had pulled over to use his cell phone. Bounds returned to his marked

8

patrol unit, reported the license plate of the vehicle, and discovered that it had been stolen. Bounds reapproached McDonald to identify him.

The video of the encounter showed that, while Bounds was leaned into the opened passenger-side window, McDonald began driving away on the shoulder of the highway. Bounds testified that he felt he was in danger of being hit by the vehicle. He returned to his patrol car and began to chase McDonald. Bounds said, and the video showed, that, although it was late at night, there were other vehicles on the road. On video and at trial, Bounds reported that McDonald was travelling at speeds as high as 100 to 105 miles per hour. Bounds testified that his training and experience had taught him that a vehicle can be used as a deadly weapon and that a vehicle driving 100 miles an hour on a highway is potentially dangerous.

The video showed that McDonald wove in and out of his lane while on the interstate, exited the interstate by traversing a ramp at a high rate of speed, ran through a stop sign at an intersection, and failed to yield to an approaching vehicle, missing it by a few seconds. After driving through the intersection, McDonald continued to speed down a side road, but realized that his path was blocked by a passing train. McDonald swerved into the grass, made a U-turn, and continued to evade Bounds at a high rate of speed while driving in the middle of both a northbound and southbound lane. McDonald then drove for several seconds in the opposite lane of travel, made a left turn onto a lane that was also blocked by the passing train, and made another U-turn, narrowly avoiding Bounds's patrol unit. Flying through other stop signs, McDonald raced through another left turn at an intersection of a highway after failing to stop for an oncoming car. While speeding on a highway bridge, McDonald entered the wrong lane of

9

travel to avoid hitting a car in front of him and returned to the correct lane of travel to avoid a collision with an oncoming vehicle. Just after Bounds reported that the chase was reaching speeds of 105 miles per hour, McDonald abruptly exited the highway, traveled into a steep ditch, hit a barrier, drove into the woods, and crashed into a tree. Even so, Bounds was able to escape on foot.

Bounds testified that McDonald used the vehicle as a deadly weapon, especially when traveling in the wrong lane of travel and passing the vehicle on the highway bridge; Bounds expressed concern that McDonald would have a collision that could hurt someone. He added that McDonald's conduct was consistent with a reckless disregard for human life. Bounds's written report, which was introduced into evidence, stated that McDonald was driving erratically by traversing wrong lanes of travel, driving in the middle of two lanes, running a stop sign, going at speeds of 105 miles per hour, passing vehicles in a no-passing zone, leaving the roadway, contacting a concrete barrier, and striking a tree.

The trial court recited several reasons why it found McDonald's driving to be erratic. It found that McDonald had used the stolen vehicle as a deadly weapon after stating, "In fact, one time you passed on a bridge, which if there had been another car coming you could have hurt somebody, seriously injured them, killed yourself, killed somebody else."

McDonald argues that the evidence was legally insufficient to support the trial court's finding that he used a motor vehicle as a deadly weapon. In evaluating McDonald's complaint,[6] "we must decide whether, in viewing the evidence in the light most favorable to the verdict, a

---

[6]Bounds does not argue that the evidence is insufficient to establish the offense of evading arrest or detention with a motor vehicle.

rational trier of fact could have found beyond a reasonable doubt that [McDonald] used or exhibited [a motor vehicle] as a deadly weapon when he was [evading arrest]." *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009) (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)).

"We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the [fact finder] 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))); *see Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality op.).

To address McDonald's arguments, we examine "the manner in which the defendant used the motor vehicle during" the offense and consider whether "the motor vehicle was capable of causing death or serious bodily injury" during the offense. *Sierra*, 280 S.W.3d at 255 (citing *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005)). A deadly weapon finding may be sustained only if there is "evidence that others were actually endangered, not 'merely a hypothetical potential for danger if others had been present.'" *Cates*, 102 S.W.3d 738 (quoting *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *adopted by Mann v. State*, 58 S.W.3d 132 (Tex. Crim. App. 2001)); *see Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014).

In considering the manner in which a defendant used his vehicle, we determine whether his or her manner of driving was reckless or dangerous. *Sierra*, 280 S.W.3d at 255 (citing *Drichas*, 175 S.W.3d at 798; *Cates*, 102 S.W.3d at 738–39). Driving has been held to be reckless or dangerous when the defendant (1) lost control of the vehicle, (2) caused or almost caused an accident, (3) disregarded traffic signals and signs, (4) caused a high-speed chase, or (5) drove erratically. *See id.*

Here, the trial court found, and the evidence showed, that McDonald lost control of the vehicle and crashed into a tree. He narrowly avoided several cars during the chase, including when he passed the car in front of him on a highway bridge by traveling into oncoming traffic and then having to return to the correct lane to avoid a collision. McDonald disregarded stop signs, yield signs, and the posted speed limit; engaged in a high-speed chase; and drove erratically by leaving the roadway and traveling in two opposing lanes at the same time. We find that the evidence shows that McDonald drove the vehicle in a reckless and dangerous manner.

We next consider whether the manner of his use of the vehicle was capable of causing serious injury or death such that other people were placed in actual danger. While "the danger posed to motorists must be actual, and not simply hypothetical, the statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle to justify a deadly weapon finding." *Drichas*, 175 S.W.3d at 799. "[A] deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." *Id.*

12

The record in this case establishes that motorists were on the highway when McDonald drove in a dangerous manner. The video shows that there were other vehicles on the interstate when McDonald initiated the high-speed chase. Early into the chase, McDonald failed to yield to an approaching vehicle and missed it only by a few seconds. He later sped through a highway intersection after failing to stop for an oncoming car. While speeding on a highway bridge, McDonald entered the wrong lane of travel to avoid hitting the car in front of him and returned to the correct lane of travel to avoid colliding with an oncoming vehicle. As in *Drichas*, we find that the evidence was sufficient for the trial court to find, beyond a reasonable doubt, that McDonald used the vehicle as a deadly weapon while evading arrest.

Because the trial court's deadly weapon finding was supported by sufficient evidence, we overrule this point of error.

*(3)*      *We Must Modify the Trial Court's Judgment to Reflect the Proper Degree of Offense*

McDonald's judgment lists the degree of offense as a first-degree felony, but McDonald's charge for evading arrest or detention with a motor vehicle was a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A). As a result of the State's habitual-offender punishment-enhancement allegations, McDonald's offense was punishable "by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d). While the enhancement allegations were used to elevate McDonald's punishment range, they did not change the classification of the evading arrest or detention offense. *See id.*; *Ford v. State*, 334 S.W.3d 230, 234–35 (Tex. Crim. App. 2011); *Bledsoe v. State*, 480 S.W.3d 638, 643 (Tex.

13

App.—Texarkana 2015, pet. ref'd). As a result, the judgment's recitation that McDonald's offense was a first-degree felony is incorrect.

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (quoting *Asberry*, 813 S.W.2d at 529–30).

We modify the trial court's judgment to reflect that McDonald was convicted of a third-degree felony. As modified, the judgment is affirmed.


Josh R. Morriss, III
Chief Justice

Date Submitted:    January 10, 2022
Date Decided:      March 2, 2022

Do Not Publish

14